[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 12, 2001
THOMAS K. KAHN
CLERK

No. 98-8166

D. C. Docket No. 95-00035-CV-3

CEDRIC EAGLE,

Petitioner-Appellant,

versus

LELAND LINAHAN,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Georgia

**(October 12, 2001)**

Before TJOFLAT, WILSON and FLETCHER*, Circuit Judges.

_____

* Honorable Betty B. Fletcher, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

In this case, the petitioner, a Georgia prison inmate, seeks a writ of habeas corpus setting aside his conviction for murder. The district court denied the writ, rejecting, among other claims, petitioner's assertion that his attorney, in appealing his conviction to the Georgia Supreme Court, failed to provide the effective assistance of counsel required by the Sixth and Fourteenth Amendments.[1] We conclude that appellate counsel was ineffective in failing to ask the supreme court to set aside the conviction on the ground that petitioner had been denied the equal protection right recognized by Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 79 (1986), and its progeny.[2] We therefore reverse, and direct the district court to issue a writ of habeas corpus conditioned on the State's right to retry petitioner.

I.

---

[1] The Sixth Amendment states, in pertinent part: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. CONST. Amend. VI. The Assistance of Counsel Clause was made applicable to the States in Gideon v. Wainwright, 372 U.S. 335, 342, 83 S. Ct. 792, 795, 9 L. Ed. 2d 799 (1963).

[2] See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 146, 114 S. Ct. 1419, 1430, 128 L. Ed. 2d 89 (1994) (applying the Batson equal protection analysis to gender discrimination); Georgia v. McCollum, 505 U.S. 42, 59, 112 S. Ct. 2348, 2359, 120 L. Ed. 2d 33 (1992) (extending Batson to criminal defendants' use of peremptory challenges); Powers v. Ohio, 499 U.S. 400, 416, 111 S. Ct. 1364, 1373-74, 113 L. Ed. 2d 411 (1991) (applying Batson where the defendant's race differed from that of the excluded jurors).

A.

Petitioner, Cedric Daniel Eagle, was indicted on the charge of malice murder by a grand jury in Laurens County, Georgia on October 17, 1990 for the shooting death of Tommy Ford. Eagle entered a plea of not guilty, and, after disposing of several pretrial matters, the court scheduled his trial for December 2, 1991. In the selection of the petit jury, which began that day, the State used nine of its ten peremptory challenges to excuse black members of the venire.[3] After twelve jurors had been selected, but before they were sworn, Eagle's attorney, the Laurens County Public Defender, citing Batson, objected to their empanelment, contending that the State had exercised its challenges to the black venire persons on account of their race, in violation of the Equal Protection Clause. The judge met with counsel in chambers to hear and rule on the motion. After defense counsel reiterated her objection, the prosecutor responded. He argued that a Batson violation had not occurred because the racial composition of the twelve jurors seated in the box mirrored that of the venire: 31% of the persons comprising the venire were black,

---

[3] Forty-two persons were summoned as the venire for Eagle's trial. Twenty-six were white; sixteen were black. Four of the twelve selected for the jury were black. Under Georgia law, the defense was entitled to twenty peremptory strikes, of which Eagle exercised nineteen, and the prosecution was entitled to ten strikes, of which nine were exercised. O.C.G.A. § 15-12-165 (1990).

3

and 33% of those who had been selected (four of twelve) were black.[4] The prosecutor also noted that Eagle had used eighteen of his peremptory challenges against whites. Eagle's attorney countered that Batson claims cannot be decided by relying on mathematical ratios, comparing the racial composition of the petit jury to that of the venire.

After noting that the prosecutor had correctly calculated the ratios of whites and blacks on the venire and the jury to be empaneled, the judge overruled Eagle's Batson objection. After ruling, he added this comment about the attorneys' use of their peremptory challenges: "I think both of you were doing what you could to get the different races off."

On December 4, at the conclusion of a three-day trial, the jury found Eagle guilty of malice murder. On December 18, the court sentenced Eagle to prison for life. On January 3, 1992, Eagle's attorney filed a motion for a new trial. Shortly thereafter, she was replaced by the newly chosen Laurens County public defender, who handled the motion. The motion was denied on July 6, 1993; on August 4,

---

[4] As the prosecutor explained, "[t]he State has struck during the jury selection process, and to be fair and comply with the law there has to be four [blacks] on the [jury] . . . and we have certainly complied with that."

4

1993, the public defender appealed Eagle's conviction to the Georgia Supreme Court.[5]

B.

In preparing Eagle's brief to the supreme court, the public defender conversed with Eagle by telephone about the issues she intended to raise. Eagle told her to include in her brief ten instances in which his trial attorney's performance was deficient.[6] She declined to include them, whereupon Eagle asked the supreme court to discharge her and to permit him to proceed pro se. The court refused his request.

Meanwhile, the public defender filed Eagle's brief with the supreme court. In her brief, she contended that three trial court errors warranted the reversal of

---

[5] The Georgia Constitution permits appeal directly to the supreme court by anyone convicted of a crime, such as malice murder, where a sentence of death could have been imposed. Georgia Const., Art. VI, § VI, Para. III (providing that the Georgia Supreme Court has appellate jurisdiction over "[a]ll cases in which a sentence of death was imposed or could be imposed").

[6] Eagle contended that his trial attorney's performance was constitutionally deficient in that counsel failed to (1) obtain a plea agreement under which he would plead guilty to voluntary manslaughter; (2) challenge the racial composition of the grand jury and the petit jury; (3) move for a mistrial during jury selection on the ground that the prosecutor's questions of prospective jurors had prejudiced the venire against Eagle; (4) file a motion for a change of venue; (5) file a motion to suppress certain evidence subsequently admitted at trial; (6) move for a mistrial after the judge failed to re-swear and re-charge the jury after overnight recesses; (7) object to the jury instruction that voluntary manslaughter was a lesser included offense in the offense of murder; (8) investigate and present at trial the victim's criminal history; (9) move that the court disqualify the prosecutor from participating in the case because he had a remote relationship with the family of the victim; and (10) ensure that Eagle was present at the hearing on his motion for a new trial.

Eagle's conviction: the court erred (1) in failing to suppress Eagle's confession as involuntary; (2) in refusing to declare a mistrial after a prosecution witness commented on Eagle's bad character without Eagle having first placed his character in issue; and (3) in improperly interrogating defense witnesses by asking irrelevant and prejudicial questions in the presence of the jury.  In the cover letter accompanying her brief to the court, counsel stated that Eagle was going to file a pro se brief raising issues she had not briefed; she asked the court to accept his brief.  Eagle thereafter filed a pro se brief; it contained the ineffective assistance issues he had discussed with counsel.  His brief also contained the Batson issue his trial attorney had raised before the jury was empaneled.

The supreme court refused to entertain the supplemental brief, concluding that Eagle had no right to simultaneous self-representation and representation by counsel.  Eagle v. State, 440 S.E. 2d 2 (Ga. 1994).  The court then rejected the arguments the public defender had presented and affirmed Eagle's conviction.  Id. Given the supreme court's adverse decision, Eagle turned to the Superior Court of Lowndes County, Georgia for relief from his conviction, filing a pro se petition for a writ of habeas corpus.

C.

1.

Eagle's petition alleged that he had been denied the effective assistance of counsel by both his trial and appellate attorneys. His trial attorney was ineffective for the reasons stated in his pro se brief to the supreme court, and his appellate attorney was ineffective in failing to include his Batson and ineffective assistance of trial counsel claims in her brief to the supreme court.

The superior court held an evidentiary hearing on Eagle's petition. Eagle's trial and appellate attorneys were the only witnesses; both were called by the State and cross-examined by Eagle, who was representing himself. After receiving this testimony and argument from the parties, the court entered an order denying relief. Addressing Eagle's ineffective assistance of trial counsel claim, the court then concluded that all ten bases of the claim were procedurally defaulted since, in his direct appeal to the Georgia Supreme Court, Eagle failed to present them in his brief (filed by the public defender) as required by Georgia law.[7] The court

---

[7] Although, in Georgia, challenges to the effectiveness of trial counsel are usually cognizable in a habeas corpus proceeding brought after the direct appeal has run its course, where, as here, new counsel is appointed or retained after trial, the "[n]ew counsel must raise the ineffectiveness of [trial] counsel at the first possible stage of post-conviction review." White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991). In the case at hand, the first possible stage of post-conviction review was Eagle's motion for a new trial (filed by trial counsel). Appellate counsel could have amended the motion to include a claim that trial counsel's performance was constitutionally inadequate. Had she made the amendment, and had the trial judge rejected the claim after holding an evidentiary hearing focused on the reasonableness of trial counsel's performance, appellate counsel could have raised the claim on direct appeal. She failed, however, to amend Eagle's motion for a new trial; hence, she foreclosed the possibility of having the supreme court review the claim on direct appeal. The superior court nevertheless concluded that her failure to present the claim to the supreme court constituted a procedural default (which

7

considered whether Eagle had cause for the procedural default (and resulting prejudice), and found none.  The court based its finding on the testimony appellate counsel had given at the evidentiary hearing.  She testified that she raised the claims on direct appeal that she deemed most meritorious.  This testimony, in the court's view, showed that she had made an informed strategic decision not to present an argument (to the supreme court) that trial counsel's performance had been deficient.  Eagle v. Linahan, Civil Action No. 94CV790, (Ga. Sup. Ct. Mar. 10, 1995) at 7 (citing Smith v. Murray, 477 U.S. 527, 534, 106 S. Ct. 2661, 2666, 91 L. Ed. 2d 434 (1986), in which the Supreme Court noted that, with rare exception, "a deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of its criminal cases").[8]

_____

barred consideration of the claim on habeas).  The court erred.  The conclusion the court should have reached is that, in failing to amend Eagle's motion for new trial so to present the ineffective assistance of trial counsel claim, appellate counsel "waived" the claim.  See Thompson v. State, 359 S.E.2d 664, 665 (Ga. 1987).  In his appeal to us, however, Eagle does not take issue with the superior court's conclusion that he procedurally defaulted his ineffective assistance of trial counsel claim.  He questions, instead, the court's conclusion that he failed to show "cause" for his procedural default.  See infra note 15.

[8]  Although it had already disposed of the claim on the procedural default ground, the court went on to note that Eagle's ineffective assistance of trial counsel claim lacked merit because Eagle failed to demonstrate that trial counsel's representation was constitutionally

8

After concluding that Eagle's ineffective assistance of trial counsel claim was procedurally barred, the court considered the claim on the merits, and denied it under the "performance" prong of the standard laid down by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Addressing the quality of trial counsel's performance, the court found that it "fell within the wide range of reasonable professional conduct" required by Strickland, in that "all significant decisions were made in the exercise of reasonable professional judgment." Eagle v. Linahan, Civil Action No. 94CV790 at 9.

The superior court also rejected both bases of Eagle's ineffective assistance of appellate counsel claim. Regarding Eagle's claim that counsel should have challenged trial counsel's effectiveness on appeal, the court rejected the claim for the same reason it found no cause for Eagle's procedural default of his ineffective assistance of trial counsel claim: appellate counsel made an informed strategic decision to omit that claim in her brief to the supreme court. The court disposed of Eagle's Batson claim without comment.

The superior court denied Eagle's habeas petition on March 10, 1995. The Georgia Supreme Court denied Eagle a certificate of probable cause to appeal on

_____

defective. See Eagle v. Linahan, Civil Action No. 94CV790 at 9. Because we conclude that the procedural default ground is dispositive of this claim, it is unnecessary to cite the court's reasons for concluding that the claim lacked merit.

9

April 14, 1995. After exhausting his state remedies, Eagle brought the habeas corpus petition now before us, filing it in the Southern District of Georgia on June 8, 1995.[9]

2.

Eagle's petition contained the claims he had presented to the state habeas court and the three claims the Georgia Supreme Court resolved against him on direct appeal. The district court summarily disposed of Eagle's ineffective assistance of trial counsel claim on the ground that the state habeas court had rejected the claim on an independent and adequate state procedural ground. Eagle v. Linahan, CV395-35 (S.D. Ga. Dec. 22, 1997) (citing Marek v. Singletary, 62 F.3d 1295, 1301-02 (11th Cir. 1995), which noted that "[w]hen a state court addresses both the independent state procedural ground and the merits of the federal constitutional claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim").

---

[9] Eagle initially filed his petition with the United States District Court for the Middle District of Georgia, the court with territorial jurisdiction over the place where Eagle was confined at the time of filing. While 28 U.S.C. § 2241(d) permits state prisoners to file habeas petitions either in the district in which they were convicted or the district in which they are then confined, it also authorizes these courts to transfer such cases from one to the other. The practice of the district courts in Georgia is to transfer habeas petitions filed in the district where the petitioner is confined to the district where the petitioner was convicted. Since Eagle was convicted in the Superior Court of Lowndes County, Georgia, which is located in the Southern District of Georgia, his petition was transferred to the Southern District of Georgia, on June 20, 1995.

10

The district court reviewed Eagle's ineffective assistance of appellate counsel claim on the merits, and, like the state habeas court, concluded that Eagle had failed to demonstrate that his appellate counsel's performance was constitutionally deficient. Regarding Eagle's allegation that appellate counsel was ineffective in failing to include an ineffective assistance of trial counsel claim in her appellate brief, the district court presumed correct the state court's finding of fact that counsel's decision to forego the claim was an acceptable tactical decision. See 28 U.S.C. § 2254(d) (1994). As for Eagle's claim that counsel should have briefed his Batson claim, the court, relying on the transcript of the evidentiary hearing in the state habeas court, concluded that Eagle failed to satisfy the burden of proving that counsel's performance was deficient.[10] Finally, the district court found no error in the Georgia Supreme Court's rejection of the three claims of error presented by appellate counsel's brief.

The district court dismissed Eagle's petition on December 22, 1997. In early 1998, the court denied Eagle's application for a certificate of probable cause ("CPC") to appeal the court's disposition of his ineffective assistance of trial and

---

[10] The district court remarked that "[s]imply put, Eagle failed to develop the material facts relevant to the merits of this issue."

11

appellate counsel claims. A judge of this court granted the CPC on September 4, 1998.

## II.

At the time Eagle sought leave to appeal the district court's denial of his habeas petition, it was proper procedure in this circuit to apply the CPC rules developed under the old version of 28 U.S.C. section 2253[11] to habeas petitions, like Eagle's, filed before the April 24, 1996 effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which, among other provisions, amended 28 U.S.C. section 2253. See Tompkins v. Moore, 193 F.3d 1327, 1330 (11th Cir. 1999). After Eagle received his CPC, however, the Supreme Court held that the AEDPA amendments to section 2253[12] govern all appeals initiated after AEDPA's effective date, regardless of the filing date of the habeas

---

[11] Prior to the 1996 amendments, § 2253 provided:
An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

[12] As amended, 28 U.S.C. § 2253(c)(2)-(3) replaced the CPC requirements with the following:
(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

12

petition with the district court.  See Slack v. McDaniel, 529 U.S. 473, 478, 120 S. Ct. 1595, 1600, 146 L. Ed. 2d 542 (2000).

AEDPA changed the name of the certificate required to appeal the denial or dismissal of a section 2253 petition from CPC to "certificate of appealability" ("COA") and added a statutory standard for issuing the certificate.  See Henry v. Dep't of Corr., 197 F.3d 1361, 1364 (11th Cir. 1999).  Unlike a CPC, a COA must "indicate which specific issue or issues" show that the applicant has suffered "the denial of a constitutional right."  28 U.S.C. § 2253(c)(2)-(3); Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  Although the pre-AEDPA version of section 2253 did not require that the certificate specify the issues for which the applicant had been granted leave to appeal, precedent required that a petitioner make a "substantial showing of the denial of [a] federal right" in order to obtain a CPC.  Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983) (alteration in original) (quoting Stewart v. Beto, 454 F.2d 268, 270 n.2 (5th Cir. 1971), overruled in part on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997)).  Recently, the Supreme Court decided that the pre-AEDPA showing a petitioner had to make to obtain a CPC and the post-AEDPA statutory standard for obtaining a COA are substantially the same.  See Slack, 529 U.S. at 483-84, 120 S. Ct. at 1603, ("Except for

13

substituting the word 'constitutional' for the word 'federal,' § 2253 is a codification of the CPC standard announced in Barefoot v. Estelle . . . .").  The primary difference between the certificates, then, is that a COA must specify on its face the issues on which the petitioner has been granted leave to appeal.  Appellate review of an unsuccessful habeas petition is limited to the issues enumerated in the properly granted COA.  See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998).

In Slack, the Supreme Court clearly laid out the tests that courts should apply in deciding whether to grant a COA, both as to claims disposed of by the district court on the merits and those disposed of on procedural grounds.  "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner [seeking a COA] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484, 120 S. Ct. at 1604.  Where a district court has disposed of claims raised in a habeas petition on procedural grounds, a COA will be granted only if the court concludes that "jurists of reason" would find it debatable both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  Franklin, 215 F.3d at 1199 (quoting Slack, 529 U.S. at 4, 1206 S. Ct. at 1604).

14

"Pursuant to Slack, it is now clear that there should have been a COA in this case rather than a CPC." Peoples v. Haley, 227 F.3d 1342, 1346 (11th Cir. 2000). That Eagle was granted a CPC rather than a COA does not, however, render his appeal invalid. As we ruled in Franklin, 215 F.3d 1196:

> [T]he grant of a CPC rather than a COA here is not fatal to the appeal. By applying AEDPA's standards to this appeal and issuing a proper COA (if warranted), this panel may "fix" the inadequacies of the present CPC. The CPC was issued by a single judge, and as a panel we may revisit the ruling. See Fed. R. App. P. 27(c); 11th Cir. R. 27-1(g).

Id. at 1199. Accord Peoples, 227 F.3d at 1346 ("[I]n this situation, it is within the discretion of the court of appeals whether to apply the COA standards itself, or remand to the district court."). We therefore revisit Eagle's application for a CPC, construing it as a request for a COA and applying the standards set forth in the post-AEDPA version of section 2253. In so "fixing" Eagle's CPC, we necessarily limit the claims properly before us to those that we deem satisfy the AEDPA standards for appeal elucidated in Slack.

In seeking a certificate to appeal the district court's dismissal of his habeas petition, Eagle asserted that he should be granted a CPC on the same ineffective

assistance of trial and appellate counsel claims he presented to the state habeas court and to the district court. After we granted Eagle a CPC, we appointed counsel to represent him in this appeal. In addition to elaborating on the claims Eagle raised in his application for a CPC and pro se brief, appointed counsel raised an additional ineffective assistance of appellate counsel claim in the supplemental brief he filed.[13] We decline to consider this additional claim because it was not presented to the district court.

## A.

The district court denied Eagle's ineffective assistance of trial counsel claims because he procedurally defaulted those claims under Georgia law by not raising them on direct appeal. It is a maxim well rooted in our federalist system that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v.

---

[13] Eagle's appointed counsel alleged that Eagle's appellate attorney afforded constitutionally deficient representation because she failed to challenge as plain error the trial court's charge to the jury on manslaughter. The trial court, without objection, instructed the jury that "[i]f you find that the defendant did not . . . commit the offense of murder, . . . then you are authorized to consider the offense of voluntary manslaughter." After Eagle's conviction but before his appeal, the Georgia Supreme Court held that such a sequential jury charge on murder and voluntary manslaughter is inappropriate because the jury would not consider evidence of provocation or passion, which would authorize a conviction for voluntary manslaughter, if it decided that the defendant could be convicted of murder. See Edge v. State, 414 S.E. 2d 463, 466 (Ga. 1992).

16

Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2554, 115 L. Ed. 2d 640 (1991). Furthermore, "[t]his rule applies whether the state law ground is substantive or procedural." Id. The independent and adequate state grounds doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 729-30, 111 S. Ct. at 2554. Abiding by this principle of comity, the district court could have looked beyond the state habeas court's finding that Eagle had procedurally defaulted his ineffective assistance of trial counsel claims only if Eagle had made a showing of cause excusing the default and prejudice arising therefrom. See Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506, 53 L. Ed. 2d 594 (1977) (holding that a state procedural waiver of a federal claim will serve to bar to federal habeas review of the claim absent a showing of "cause and prejudice") (internal quotation marks omitted). Following these principles, we, in turn, will grant Eagle a COA on his ineffective assistance of trial counsel claims only if he can convince us that reasonable jurists could disagree on whether the district court's procedural ruling was correct (i.e., that Eagle had not shown cause

and prejudice to excuse the default), and that reasonable jurists could debate whether his trial counsel's performance was constitutionally deficient.[14]

Eagle asserts that his appellate counsel's refusal to raise the ineffective assistance of trial counsel claims was sufficient cause to overcome the procedural default of those claims.[15] The Supreme Court, however, made clear in Murray v. Carrier, 477 U.S. 478, 486-87, 106 S. Ct. 2639, 2644, 91 L. Ed. 2d 397 (1986), that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." This is true whether the procedural default resulted from counsel's failure to make a claim at trial or failure to raise a claim on appeal. Id. at 492, 106 S. Ct. at 2647 (holding that "counsel's failure to raise a particular claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts"). Moreover, attorney error is cause for procedural default only if the error rises to the level of

_____

[14] We note that while the district court did not state explicitly that Eagle had attempted and failed to show cause for procedurally defaulting his ineffective assistance of trial counsel claims, it did so implicitly by ruling that Eagle had failed to demonstrate that his appellate counsel was ineffective for not raising the ineffective assistance of trial counsel claims on appeal.

[15] In his brief to us, Eagle does not advance the argument that the state habeas court misapplied Georgia law in concluding that appellate counsel's failure to challenge trial counsel's effectiveness on direct appeal constituted a procedural default. Rather, Eagle's argument to us is that he has demonstrated cause for the procedural default and resulting prejudice.

constitutionally deficient assistance of counsel under the Sixth Amendment. Id. at 488, 106 S. Ct. at 2645. At the state habeas hearing, Eagle's appellate counsel testified that she considered raising an ineffective assistance of trial counsel claim on appeal but rejected it because she saw no basis for the claim and because she did not want to cloud what she deemed to be more persuasive arguments. Eagle has adduced no evidence, and it is not apparent from the record, that his appellate counsel acted unreasonably in not including his ineffective assistance of trial counsel claims in her brief to the Georgia Supreme Court. Since reasonable jurists could not debate the correctness of the district court's procedural ruling, we deny a COA on Eagle's ineffective assistance of trial counsel claims.

B.

Since the district court disposed of Eagle's ineffective assistance of appellate counsel claims on the merits, we will grant a COA on those claims if Eagle can demonstrate that jurists of reason would debate whether the district court's decision was wrong. As discussed above, Eagle has not demonstrated that reasonable jurists would debate whether his appellate counsel's decision not to raise the ineffective assistance of trial counsel claims was so misconceived as to render her representation constitutionally deficient. Analysis of Eagle's claim that

19

appellate counsel was ineffective for not raising a <u>Batson</u> claim on appeal, however, leads to a different conclusion.

The district court rejected Eagle's <u>Batson</u> theory of ineffective assistance of appellate counsel on the ground that, at the evidentiary hearing held in the state habeas court, Eagle failed establish that his appellate counsel's failure to raise a <u>Batson</u> claim on appeal was unreasonable. After noting the habeas court's finding, the court reasoned that since Eagle's appellate attorney testified in the state collateral proceeding that she had raised the three claims on appeal that she deemed most meritorious, she must have concluded that the <u>Batson</u> claim lacked merit. While it may be true that Eagle's appellate attorney considered and rejected the <u>Batson</u> claim, we disagree with the court's insinuation that a habeas petitioner raising an ineffective assistance of counsel claim must always present testimonial evidence that counsel's performance was unreasonable or, <u>ipso</u> <u>facto</u>, lose on the claim. Instead, we believe that reasonable jurists could debate, based exclusively upon a review of the trial transcripts, whether the decision of Eagle's appellate attorney not to raise a <u>Batson</u> claim on appeal comported with the Sixth Amendment right to competent representation by appellate counsel. Therefore, we grant Eagle a COA on the issue of whether his appellate counsel was ineffective for failing to raise a <u>Batson</u> claim on appeal.

20

III.

Claims by criminal defendants that they were denied effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments are the cornerstone of many habeas corpus petitions, including this one. In both his state and federal petitions, Eagle's Batson claim has necessarily been a rider on his ineffective assistance of appellate counsel claim because he procedurally defaulted the Batson claim by not raising it on direct appeal. Were he so inclined, Eagle could bring his Batson claim as a substantive claim and seek to overcome the procedural default by alleging that his appellate counsel's ineffectiveness satisfied the Wainwright cause and prejudice test. However, by asserting ineffective assistance of appellate counsel as the substantive claim and relying on counsel's failure to raise the Batson claim as the evidence of her ineffectiveness , Eagle has avoided the need to justify his procedural default of the Batson claim.

We review the district court's denial of habeas corpus relief de novo. See Agan v. Singletary, 12 F.3d 1012, 1017 (11th Cir. 1994). In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court held that the Sixth Amendment Counsel Clause guarantees criminal defendants a right to effective assistance of counsel. The Court in Strickland

21

articulated a two-pronged test for determining whether a defendant was denied constitutionally adequate assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The same standard applies whether we are examining the performance of counsel at the trial or appellate level. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

### A.

To demonstrate that his appellate counsel rendered deficient representation, Eagle must show that her performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Eagle asserts that it was unreasonable for counsel not to raise the Batson claim on appeal. As we noted in Bolender v. Singletary, 16 F.3d 1547, 1558 n.12 (11th Cir. 1994)

(citations omitted), "[t]he question of whether a decision by counsel was a tactical one is a question of fact." "Whether the tactic was reasonable, however, is a question of law and is reviewed de novo." Collier v. Turpin, 177 F.3d 1184, 1199 (11th Cir. 1999) (citing Horton v. Zant, 941 F.2d 1449, 1462 (1991)).

The record contains no testimonial evidence as to whether Eagle's appellate counsel made a tactical decision not to raise the Batson claim or, rather, simply overlooked that potential ground for reversal. Eagle did not specifically question his appellate counsel about the Batson claim during the state habeas hearing. Nevertheless, based on her testimony, the state habeas court found that she raised the three claims she deemed most meritorious on appeal. That finding seems to presume that counsel considered and rejected the Batson claim. Since Eagle does not challenge any of the state habeas court's factual findings, we presume this finding to be correct.[16] See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.") Therefore, we begin our analysis of whether the

---

[16] Circumstantial evidence in the record supports the state habeas court's finding that Eagle's appellate attorney did not overlook the Batson claim on appeal, but, rather, made a tactical decision not to raise it. Eagle's habeas filings suggest that, before attempting to raise the Batson claim in a pro se supplemental brief to the Georgia Supreme Court, he first asked his appellate attorney to raise the Batson issue in her brief.

failure by Eagle's appellate counsel to raise the Batson claim on appeal rendered her performance constitutionally deficient from the factual premise that she made a tactical decision not to raise the Batson claim.[17]  Contrary to the conclusions of the state habeas court and the district court, we find sufficient evidence in the cold record to evaluate the reasonableness of the attorney's decision not to raise the Batson issue on appeal.

In considering the reasonableness of an attorney's decision not to raise a particular claim, we must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691, 104 S.

---

[17] Since Eagle filed his petition under § 2254 with the district court in June 1995, prior to AEDPA's April 24, 1996 effective date, the standard of review prescribed in the pre-AEDPA version of § 2254 governs our review of Eagle's claim.  See Lindh v. Murphy, 521 U.S. 320, 327, 117 S. Ct. 2059, 2063 138 L. Ed. 2d 481 (1997) (holding that the AEDPA amendments to § 2254 apply only to cases filed after AEDPA's effective date).  In applying the pre-AEDPA version of § 2254(d) to Eagle's Batson theory of ineffective assistance of appellate counsel, we presume correct any written findings of fact made by the state habeas court unless a statutory exception applies.  The only factual finding bearing on the claim under review in this case was that Eagle's appellate counsel raised the three claims on appeal that she deemed most meritorious.  The state court observed that Eagle had not adduced any evidence in his habeas hearing demonstrating that his appellate counsel was ineffective for failing to raise the Batson claim on appeal.  This observation led the state habeas court to conclude that Eagle could not succeed on his Batson theory of ineffective assistance of appellate counsel because he had developed no facts in his habeas evidentiary hearing to support that claim.  While we are bound by the state court's finding that Eagle's appellate attorney raised the three claims she deemed worthy of appellate review, the state court's legal conclusion–that the Batson claim must fail since Eagle adduced no evidence other than the transcript of the jury selection proceeding to show that his appellate counsel should have raised the Batson claim–is not binding on us because the ultimate determination of whether counsel provided ineffective assistance is a mixed question of law and fact that we review de novo.  See McBride v. Sharpe, 25 F.3d 962, 972 (11th Cir. 1994).

24

Ct. at 2066.  In Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), the Supreme Court held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues.  See id. at 751, 103 S. Ct. at 3312.  Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  In the fall of 1993 when Eagle's appellate counsel submitted her brief appealing Eagle's conviction, the Supreme Court's Batson decision had been embedded in our constitutional jurisprudence for seven years and the principle of equal protection in jury selection the decision espoused had been applied by the Supreme Court and the courts of this circuit many times.  See, e.g., Georgia v. McCollum, 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992); Hernandez v. New York, 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991); Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); United States v. Williams, 936 F.2d 1243 (11th Cir. 1991); United States v. Alison, 908 F.2d 1531 (11th Cir. 1990); United States v. Alston, 895 F.2d 1362 (11th Cir. 1990); Fludd v. Dykes, 863 F.2d 822 (11th Cir. 1989);

25

United States v. David, 844 F.2d 767 (11th Cir. 1988).  Thus, we evaluate the reasonableness of counsel's decision not to raise the Batson claim through a lens tinted by Batson and its progeny at the time counsel was prosecuting Eagle's appeal.

1.

In Batson, the Supreme Court held that a prosecutor's use of peremptory challenges to preclude blacks from serving on a petit jury on account of their race violates the Equal Protection Clause of the Fourteenth Amendment.  See Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.").  In conjunction with its holding, the Batson Court established a framework for courts to use in evaluating Batson challenges to the state's use of peremptory strikes: The defendant must first make out a prima facie case of discriminatory purpose on the part of the prosecution and, if the defendant has made out a prima facie case, the prosecution must "come forward with a neutral explanation for challenging black jurors." Batson, 476 U.S. at 96-97, 106 S. Ct. at 1723.  A defendant makes out a prima facie case of discrimination in jury selection by showing that "'he is a

26

member of a cognizable racial group' and that 'the relevant circumstances raise an inference' that [the prosecution] has 'exercised peremptory challenges to remove from the venire members of [his] race.'" Fludd v. Dykes, 863 F.2d 822, 829 (11th Cir. 1989) (quoting Batson, 476 U.S. at 96, 106 S. Ct. at 1723). In Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the Supreme Court held that a defendant of any race can raise an equal protection challenge to the prosecution's discriminatory use of peremptory challenges, thereby eliminating any need for a criminal defendant raising such an equal protection challenge to show commonality of race with the excluded jurors.[18]

---

[18] In Powers, the Supreme Court clarified that "[t]he discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury . . . . not because the individual jurors dismissed . . . may have been predisposed to favor the defendant[, but] because racial discrimination in the selection of jurors casts doubt on the integrity of the judicial process and places the fairness of a criminal proceeding in doubt." 499 U.S. 400, 411, 111 S. Ct. 1364, 1371, 113 L. Ed. 2d 411 (1991) (internal quotes and citations omitted). The Powers Court also noted that "Batson was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors." 499 U.S. at 406, 111 S. Ct. at 1368 (internal quotes omitted). Besides acknowledging the injury done to a defendant, "Batson recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large." Id. at 406, 111 S. Ct. at 1368 (citing Batson, 476 U.S. at 87, 106 S. Ct. at 1718). Thus, in order to promote enforcement of the equal protection rights of defendants and jurors alike, the Powers Court created standing in any criminal defendant to challenge a prosecutor's racially discriminatory use of peremptory strikes, whether or not the defendant and the excluded jurors are of the same race. See Farrell v. Davis, 3 F.3d 370, 372 (11th Cir. 1993) (holding that Powers created a new rule of standing, which was a "complete departure" from the rules in Batson because it did not require the defendant raising the equal protection challenge to be of the same race as the excluded jurors).

We acknowledge that since Eagle is a black man and was challenging the prosecution's use of the State's peremptory strikes to exclude blacks from the jury, the decision in Powers did not alter his standing to bring the Batson challenge. The effect of Powers in this case was simply to reduce the showing Eagle needed to make in the trial court when raising the equal protection

27

In this appeal, Eagle argues that the trial court erred when it held that he had not established a Batson violation. Ordinarily, reviewing such claim would require us to look over the trial court's shoulder, reconstructing the circumstances surrounding the voir dire of the venire persons and the Batson hearing from the cold record, to decide whether the court correctly determined that the defendant had not raised an inference that the prosecution used its peremptory challenges to remove jurors on account of their race.[19] In this case, however, we need not engage in this exercise; the trial judge's own finding immediately following his ruling against Eagle revealed that the ruling was based on a misapplication of the law. Given that the trial judge found that "both [the defense and the prosecution] were doing what [they] could to get the different races off" in the use of their peremptory strikes, his ruling that Eagle had failed to make out a Batson claim must have been incorrect, even when viewed through a deferential lens. See Central Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., Inc., 236 F.3d 629, 635 (11th Cir. 2000). Instead of focusing on what motivated the prosecutor's use of his peremptory challenges, and the fact

_____

challenge to that of "raising an inference" that a discriminatory purpose underlay the prosecution's use of peremptory strikes.

[19] Since Eagle filed his petition for habeas corpus relief prior to AEDPA's effective date, this case is governed by the pre-AEDPA version of § 2254. Thus, we are bound by the state court's findings of fact unless not "fairly supported by the record." 28 U.S.C. § 2254(d)(8). We will not disturb the district court's findings of fact unless clearly erroneous, Williams v. Turpin, 87 F.3d 1204, 1209 (11th Cir. 1996); however, we review the district court's legal conclusions de novo, Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001).

that eight of nine of those he struck were black (in determining whether the prosecution's use of peremptory strikes raised an inference of racial discrimination), the judge focused on the racial characteristics of the venire persons whom the prosecution chose not to strike. The judge concluded that Eagle had not raised an inference of unlawful discrimination because the proportion of blacks empaneled as petit jurors fairly represented the racial mix of the broader venire. The judge concluded from these figures that the prosecutor's use of peremptory challenges to eliminate blacks from the jury was counteracted by Eagle's use of peremptory challenges to eliminate whites from the jury.

The trial court's exclusive reliance on a comparison of the proportion of blacks on the petit jury to the proportion of blacks in the venire to determine the presence of a <u>Batson</u> violation was error. While it may be true that the prosecution's use of peremptory strikes did not result in a racially unbalanced petit jury, that is not the test for deciding whether there has been an equal protection violation. As we said in <u>United States v. David</u>, "the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown." <u>United States v. David</u>, 803 F.2d 1567, 1571 (11th Cir. 1986). Thus, the presence of blacks on the jury, while significant, does not preclude a finding of

racial discrimination. See Cochran v. Herring, 43 F.3d 1404, 1412 (11th Cir. 1995) (citing United States v. Allison, 908 F.2d 1531,1537 (11th Cir. 1990)). Since the trial judge stated on the record that he believed, based on the totality of the circumstances surrounding the selection of the jury, that the prosecution had used peremptory strikes to remove blacks on account of their race, Eagle had established a Batson violation and the trial court should have required the prosecution to produce "a neutral explanation for challenging black jurors." Batson, 476 U.S. at 97, 106 S. Ct. at 1723.

Furthermore, while we are troubled that Eagle also may have been using his peremptory strikes in a discriminatory manner, that does not justify allowing the prosecution's unconstitutional use of peremptory strikes to stand. As the Supreme Court has indicated in Batson and its progeny, Eagle's equal protection rights are not the only ones at stake; defendants like Eagle have standing to raise equal protection challenges during jury selection as a means of allowing the courts to vindicate the rights of the excluded jurors as well. See supra note 18. That Eagle may have unclean hands, and therefore receive a seemingly undeserved new trial, is a necessary byproduct of our Fourteenth Amendment jurisprudence.[20] As the

_____

[20] Certainly there are unfortunate costs to affording a petitioner with unclean hands a new trial, but, much as the Supreme Court has said in the context of racial discrimination in the composition of a grand jury, "we believe such costs as do exist are outweighed by the strong policy the Court has consistently recognized of combating racial discrimination in the

30

Supreme Court said long ago in <u>Hill v. Texas</u>, 316 U.S. 400, 62 S. Ct. 1159, 86 L. Ed. 1559 (1942), a case in which blacks had been discriminatorily excluded from the indicting grand jury, "no state is at liberty to impose upon one charged with crime a discrimination in its trial procedure which the Constitution . . . forbid[s]. Nor is this Court at liberty to grant or withhold the benefits of equal protection, which the Constitution commands for all, merely as we may deem the defendant innocent or guilty." <u>Id.</u> at 406, 62 S. Ct. at 1162. We believe the same principle governs when racial discrimination affects the composition of the petit jury that renders a conviction. The fundamental premise of <u>Batson</u> and its progeny is that criminal defendants and excluded jurors alike are denied equal protection of the laws when the trial jury is constructed in a racially discriminatory manner. The remedy for such an equal protection violation is reversal of the conviction without regard to whether we perceive the defendant to be actually innocent or guilty.

2.

The trial court's error in applying the rule in <u>Batson</u> is apparent on the face of the transcript of the jury selection proceedings. Where, as here, appellate counsel fails to raise a claim on appeal that is so obviously valid that any competent lawyer

---

administration of justice." <u>Rose v. Mitchell</u>, 443 U.S. 545, 558, 99 S. Ct. 2993, 3001, 61 L. Ed. 2d 739 (1979).

31

would have raised it, no further evidence is needed to determine whether counsel was ineffective for not having done so. Although Eagle did not question his appellate attorney about the Batson claim during the state habeas proceeding, no conceivable reason that she might have proffered would have made her failure to pursue the claim reasonable. Her failure to raise it, standing alone, establishes her ineffectiveness.

B.

Having determined that Eagle's appellate counsel rendered ineffective assistance of counsel in not raising the Batson claim on appeal, we must now decide whether her conduct prejudiced Eagle's case. In Strickland, the Supreme Court stated that to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To determine whether the failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim. See Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). If we conclude that the omitted claim would have had a reasonable probability of success, then counsel's

32

performance was necessarily prejudicial because it affected the outcome of the appeal. See id.

It is clear that Eagle's Batson claim would have succeeded on appeal. Had the claim been presented, the supreme court would have had two options: remand the case for an evidentiary hearing concerning the prosecutor's motive for peremptorily challenging the black venire persons or remand the case for a new trial. Since the trial judge had already found, and stated on the record, that the prosecutor's challenges, like Eagle's, were race based, an evidentiary hearing would have been unnecessary.[21] Consequently, the supreme court would, in all probability, have opted to grant a new trial. There can be no doubt, then, that counsel's decision to omit the Batson claim from her brief undermines confidence in the outcome of Eagle's direct appeal sufficient to satisfy the prejudice prong of Strickland.[22]

---

[21] Recall that, in response to Eagle's Batson objection, the prosecutor took the position that his motives for challenging the black venire persons was irrelevant; what mattered was whether the ratio of blacks on the petit jury mirrored the ratio of blacks on the venire.

[22] A panel of this court has held that a petitioner seeking habeas relief on a claim that his trial counsel rendered ineffective assistance in failing to raise an equal protection objection during voir dire cannot succeed on that claim unless he can demonstrate that the outcome of his trial was affected by the equal protection violation. See Jackson v. Herring, 42 F.3d 1350, 1362 (11th Cir. 1995) (finding that the habeas petitioner could not demonstrate that he was prejudiced by his trial counsel's failure to raise a Swain objection because "[n]othing in the record indicates that a racially balanced jury would have been more likely to acquit or convict of a lesser charge than was the all-white jury in this case"). While the Strickland prejudice prong does seem to require this showing, see supra, we are troubled by the practical implication of that requirement

IV.

Eagle was denied the effective assistance of counsel on appeal, in violation of the Sixth and Fourteenth Amendments, and is entitled to habeas corpus relief. We therefore REVERSE the district court's judgment and REMAND the case with instructions to issue a writ of habeas corpus conditioned on the State's right to provide Eagle a new trial within a reasonable period of time.

SO ORDERED.

---

when the alleged deficient performance is failure to raise a Batson-type claim at trial or on appeal. How can a petitioner ever demonstrate that the racial make-up of the jury that convicted him affected its verdict? Furthermore, in requiring a petitioner to make such a showing, we are asking that he convince us of the very conclusion that Batson prohibits: that the race of jurors affects their thinking as jurors. Certainly we acknowledge, as Justice O'Connor noted in J.E.B. v. Alabama, 511 U.S. 127, 148, 114 S. Ct. 1419, 1432, 128 L. Ed. 2d 89 (1994) (O'Connor, J., concurring), that, like any other attribute an individual brings to jury service, race matters, but the foundation of Batson is that race cannot be allowed to matter if the Equal Protection Clause is to be given its full due. The Equal Protection Clause simply prohibits the use of race as a proxy in the exercise of peremptory challenges. As Justice Kennedy observed in J.E.B., 511 U.S. at 154, 114 S. Ct. at 1434, "[n]othing would be more pernicious to the jury system than for society to presume that persons of different backgrounds go to the jury room to voice prejudice." That being the case, how can a court, in attempting to give force to the Equal Protection Clause, ask a habeas corpus petitioner to prove, or itself conclude, that the bare factor of juror race, standing alone, affected the outcome of his trial?

We need not address this issue directly as Eagle's Batson argument is not his substantive claim but rather is presented as evidence in support of his substantive claim: that his appellate counsel was constitutionally ineffective for not raising the Batson claim on appeal. But we would be remiss were we to avoid acknowledging this troubling application of the Strickland prejudice prong to Batson-type claims. Perhaps in this context we should follow Supreme Court precedent in cases where racial discrimination has altered the composition of the indicting grand jury by "revers[ing] the conviction . . . without inquiry into whether the defendant was prejudiced in fact by the discrimination." Rose v. Mitchell, 443 U.S. 545, 556, 99 S. Ct. 2993, 3000, 61 L. Ed. 2d 739 (1979). In other words, where counsel's constitutionally ineffective representation lets stand a structural error that infects the entire trial with an unconstitutional taint, perhaps we should not require the defendant to prove actual prejudice in the outcome of his trial.

34