[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**AUGUST 15, 2003**
**THOMAS K. KAHN**
**CLERK**

_____

No. 01-16602

_____

D. C. Docket No. 00-02976-CV-ASG

JOSEPH H. DAVIS, JR.,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
James Crosby,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 15, 2003)**

Before BARKETT and WILSON, Circuit Judges, and LIMBAUGH[*], District
Judge.

PER CURIAM:

_____

[*]Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of
Missouri, sitting by designation.

This appeal requires us to determine whether we should look to the outcome of the trial or the outcome of the appeal in determining whether a petitioner was prejudiced when his attorney failed to preserve his *Batson v. Kentucky*, 476 U.S. 79 (1986), claim for appellate review.[1] In addressing this issue, we must determine whether *Jackson v. Herring*, 42 F.3d 1350, 1361–62 (11th Cir. 1995) (requiring the petitioner to show some likelihood of a more favorable result at trial had trial counsel raised the *Batson* claim), or *Eagle v. Linahan*, 279 F.3d 926, 943–44 (11th Cir. 2001) (requiring a showing of some likelihood of a more favorable result on appeal had appellate counsel raised a *Batson* claim), controls. As we find that trial counsel is acting in an appellate role when he fails to preserve a *Batson* claim, we believe that *Eagle*, not *Jackson*, controls. Accordingly, we

---

[1]The district court granted a certificate of appealability on the following issues:

> (1)[w]hether the state prosecutor exercised a preemptory challenge in a discriminatory manner thereby denying Petitioner Davis equal protection of the law; [and]
> (2) [w]hether the petitioner was denied effective assistance of counsel in violation of the Sixth Amendment where his attorney (a) failed to renew an objection regarding the state prosecutor's exercise of a preemptory challenge in a discriminatory manner, (b) failed to interview and subpoena Brenda Smith as a defense witness, and (c) failed to introduce testimony regarding petitioner Davis' first encounter and altercation with the deceased twenty (20) minutes before the shooting.

*Davis v. Moore*, S.D. Fla. 2001, __ F. Supp. 2d __ (No. 00-02976-CV-ASG, Dec. 12, 2001) (footnote omitted). We, however, address only the *Batson* issues herein, as we find that the other issues lack merit.

vacate the district court's order denying Joseph H. Davis, Jr. habeas relief and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

Davis was indicted for first degree murder, burglary with a firearm, and possession of a firearm during the course of an armed burglary, and, on July 18, 1996, a jury found him guilty of all three charges. Thereafter, he was sentenced to life in prison plus consecutive sentences of fifteen years and 201.7 months of imprisonment. Davis appealed, raising various issues.

Among the issues Davis raised on direct appeal was a *Batson* claim. Essentially, he asserted that the trial court erred in overruling his attorney's *Batson* challenge, because the court inadvertently attributed the statements of one venireperson to another.[2] Although the Florida Third District Court of Appeal found that Davis's *Batson* claim was "well taken," it declined to address it because

---

[2]The trial judge ruled as follows:

> Well, I think Mr. Swift is also the only one who felt that he could not follow the law that he was going to be instructed upon, and he would follow his gut feeling. I went back and asked him, and he said he could, and while I think that would prevent the state from making a cause challenge, it certainly permits a racially-neutral reason for a peremptory challenge, and I will allow it.

Although the trial court found that Broderick Swift stated that he would follow his gut feeling, the record clearly establishes that Swift never said anything during the voir dire that would indicate that he was unable to follow the law or that he would decline to follow the court's instructions. In fact, the only two statements he made with respect to that issue were "I would follow the law" and "I can follow it."

3

his attorney failed to preserve the issue for appeal. *Davis v. State*, 710 So. 2d 723, 724 (Fla. Dist. Ct. App. 1998) (per curiam) (citing *Joiner v. State*, 618 So. 2d 174 (Fla. 1993)).[3] As a result, the court affirmed the first degree murder and burglary convictions.[4] *Id.*

Thereafter, Davis filed a Florida Rule of Criminal Procedure 3.850 motion in which he asserted, among other things, that he received ineffective assistance of trial counsel, because his attorney failed to preserve his *Batson* challenge. That motion, however, was denied on March 16, 2000, and the court of appeal affirmed the denial on June 28, 2000. *See State v. Davis*, Fla. Cir. Ct. 2000, __ So. 2d __ (No. 95-023785, Mar. 16, 2000), *aff'd*, 763 So. 2d 332 (Fla. Dist. Ct. App. 2000) (per curiam) (unpublished table decision). As a result, Davis filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus in the Southern District of Florida. In that petition, he raised the same claims that were raised in his Rule 3.850 motion, but added a substantive equal protection claim based upon the government's improper exercise of its peremptory challenges. The magistrate judge recommended that the petition be denied, and the district court, adopting the report

---

[3]To preserve a *Batson* challenge, counsel must renew his objections before the swearing in of the jury. *Joiner*, 618 So. 2d at 175–76.

[4]The court, however, vacated Davis's possession conviction, held that Davis's sentences should have been concurrent rather than consecutive, and remanded for resentencing. *Davis*, 710 So. 2d at 724.

and recommendation of the magistrate judge, denied the petition. *See Davis v. Moore*, S.D. Fla. 2001, __ F. Supp. 2d __ (No. 00-02976-CV-ASG, Oct. 23, 2001). The district court, however, granted Davis a certificate of appealability.

STANDARD OF REVIEW

We review a district court's denial of a § 2254 petition de novo. *Sims v. Singletary*, 155 F.3d 1297, 1304 (11th Cir. 1998). As Davis filed his § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, the provisions of that Act apply. *See Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). As a result, the district court normally could not grant habeas relief under § 2254 for claims that were adjudicated on the merits in state court unless the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In this case, however, such deference was not required.

Although Davis raised his claim of ineffective assistance of counsel in failing to *preserve* the *Batson* claim in his Rule 3.850 motion, the state courts failed to address it in denying relief. Instead, the state courts construed his motion as resting on the clearly unsupported assertion that trial counsel failed *to raise* a

5

*Batson* claim.[5]  As the Florida courts failed to resolve the merits of Davis's claim, the present controversy falls outside of § 2254(d)(1)'s requirement that we defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established federal law.  *See id.*; *Wiggins v. Smith*, __ U.S. __, 123 S. Ct. 2527, 2542 (2003) (When a state court denies relief by making an unreasonable application of the first prong of the test for ineffective assistance of counsel and thus never reaches the second prong, application of the second prong in federal habeas proceedings is de novo.); *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) (interpreting § 2254(d)(1)'s requirement of deference with respect to federal claims "adjudicated on the merits in State court proceedings" (internal quotation marks omitted)), *cert. denied*, __ U.S. __, 123 S. Ct. 1511 (2003).

## DISCUSSION

Davis asserts that he received ineffective assistance of counsel when his

---

[5]Because Davis's motion, when read against the disposition of his original appeal, fairly presented the quite different claim that trial counsel was ineffective for failing *to preserve* the *Batson* issue by *renewing* his earlier objection, Davis has satisfied the exhaustion requirement of § 2254(c).  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (applying the exhaustion requirement by assessing "whether [the petitioner] has fairly presented his claims to the state courts").

attorney failed to preserve his *Batson* claim.[6]  Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which established a two-pronged test that a habeas petitioner must satisfy to obtain relief.  Under *Strickland*, the petitioner "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Id.*

On the record before us, there is no question that Davis's counsel performed deficiently in failing, as required by Florida's *Joiner* rule, to renew Davis's *Batson* challenge before accepting the jury.[7]  The parties, however, relying upon *Eagle* and *Jackson*, dispute whether we should look to the outcome of the trial or the outcome of the appeal in determining whether Davis was prejudiced by his attorney's performance.

*Jackson* and *Eagle* both confronted a state's use of peremptory strikes to remove black veniremembers from the jury pool in a manner highly suggestive of unconstitutional racial discrimination.  *See Batson*, 476 U.S. at 89 (holding that

---

[6]The district court denied Davis's equal protection claim as procedurally defaulted.  We cannot review a claim that has been procedurally defaulted unless the petitioner can show cause for failing to raise it before the state court.  *See Jackson*, 42 F.3d at 1358 ("All is not lost . . ., however, if [the petitioner] can demonstrate cause and prejudice for her default . . . .").  "However, by asserting ineffective assistance of appellate counsel as the substantive claim and relying on counsel's failure to raise the *Batson* claim as the evidence of [counsel's] ineffectiveness, [Davis] has avoided the need to justify his procedural default of the *Batson* claim."  *Eagle*, 279 F.3d at 938.

[7]There is no indication that Davis's counsel decided to abandon the previously rejected *Batson* claim on the basis of any sort of strategic calculation.

7

racial discrimination by the state in the selection of juries violates the Equal

Protection Clause).  In *Jackson*, the prosecutor had used twelve of twenty-two

peremptory strikes to exclude all twelve black venire members who were qualified

to serve as jurors, leaving an all-white jury to pass on the defendant's guilt and

decide whether she should be sentenced to death.  42 F.3d at 1354.  In *Eagle*, the

prosecutor had used eight or nine peremptory strikes to excuse black venire

members.  *See* 279 F.3d at 930 & n.3, 941.  Both patterns led this Court to

conclude that an objectively reasonable defense attorney would have challenged

the state's conduct under the Equal Protection Clause of the Fourteenth

Amendment.  *Id.* at 943; *Jackson*, 42 F.3d at 1360.  Yet in *Jackson* the petitioner's

trial attorney and in *Eagle* the petitioner's appellate attorney had failed to do so.

In both cases, we turned from our conclusion that counsel had performed

deficiently to the showing of prejudice required to establish constitutionally

ineffective assistance of counsel.[8]   In *Jackson*, we required the petitioner to show

some likelihood of a more favorable result at trial had trial counsel raised the

---

[8]More precisely, *Jackson* examined whether counsel's faulty performance excused the habeas petitioner's default of a *Batson* claim, not whether counsel's ineffectiveness directly entitled the petitioner to relief.  *Jackson*, 42 F.3d at 1358.  We made clear, however, that our inquiry was governed by the same test we would apply had the petitioner been challenging her lawyer's performance directly: "In order to constitute cause sufficient to overcome procedural default, a counsel's performance must be *constitutionally* ineffective under the standards of *Strickland*."  *Id.*

8

equal protection claim. 42 F.3d at 1361–62. In *Eagle*, we required a showing of some likelihood of a more favorable result on appeal had appellate counsel raised a *Batson* claim. 279 F.3d at 943–44.

At first blush, it might appear that following *Jackson* would be proper as that case, like this one, dealt with the performance of trial counsel while *Eagle* dealt with the performance of appellate counsel. This means of distinguishing between *Jackson* and *Eagle*, however, fails to take account of *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

In *Flores-Ortega*, a habeas petitioner argued that his trial counsel rendered constitutionally ineffective assistance when, by neglecting to file timely notice in the trial court, she failed to preserve the petitioner's right of appeal. *Id.* at 474. The United States Supreme Court held that *Strickland*'s prejudice prong required the petitioner to show "that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. *Flores-Ortega* thus establishes that the prejudice showing required by *Strickland* is not always fastened to the forum in which counsel performs deficiently: even when it is *trial* counsel who represents a client ineffectively in the *trial court*, the relevant focus in assessing prejudice may be the client's appeal.

Under the peculiar circumstances of this case the only effect of *trial* counsel's negligence was on Davis's *appeal*. Unlike the situation in *Jackson* – where defense counsel "remained absolutely silent as prosecutor Hudson struck all blacks from the venire," 42 F.3d at 1360 – Davis's trial counsel ably brought the state's possibly unconstitutional conduct to the trial court's attention. He objected when the state moved to strike first one, and then a second, black venire member. He responded to the prosecutor's explanation for the second strike by emphasizing that not a single black juror had been seated on the panel as of that point in the selection process. Moreover, although Davis's counsel did not emphasize the point, the prosecutor's explanation for the strike did not make sense.[9] As Florida's Third District Court of Appeal later noted, this record was sufficient to make Davis's *Batson* claim "well taken." *Davis*, 710 So. 2d at 724.

The trial court nonetheless upheld both of the challenged strikes. It is only at this point in the proceedings that the efficacy of Davis's counsel became

---

[9]The prosecutor defended the second challenged strike "for the exact same reason" she had given moments before for striking a different black juror. This was the first juror's somewhat equivocal "answers about his ability to follow the law." Yet unlike the first juror, the second stated with perfect consistency that he would follow the law regardless of any tension between its rules and his own beliefs. Indeed, one additional disclosure made by this second juror was that he had family and friends in law enforcement, a point that would seem to make him a more rather than less desirable juror for the state. The prosecutor's apparent confusion of identities spilled over to the trial court, which likewise appears to have attributed a statement made by the first black juror to the second.

10

doubtful.  Under Florida law, simply objecting to the state's possibly discriminatory strikes, and then countering any purportedly race-neutral explanation given by the prosecution, does not suffice to preserve a *Batson* claim for appeal.  Rather, trial counsel must press the *already rejected* challenge a second time at the conclusion of voir dire, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim.  *Joiner*, 618 So. 2d at 176; *see also Melbourne v. State*, 679 So. 2d 759, 765 (Fla. 1996) (ruling that a defendant "failed to preserve" a claim of discriminatory jury selection "because she did not renew her objection before the jury was sworn").  Davis's counsel did neither, and on direct appeal the Third District Court of Appeal accordingly ruled that the claim had not been preserved.

Thus, Davis faults his trial counsel not for failing to raise a *Batson* challenge – which counsel did – but for failing to preserve it.  As his federal habeas counsel puts it, the issue is not trial counsel's failure "to bring the *Batson* issue to the attention of the trial court," but "failure in his separate and distinct role of preserving error for appeal."  As in *Flores-Ortega*, the attorney error Davis identifies was, by its nature, unrelated to the outcome of his trial.  To now require Davis to show an effect upon his trial is to require the impossible.  Under no readily conceivable circumstance will a simple failure to preserve a claim – as

11

opposed to a failure to raise that claim in the first instance – have any bearing on a trial's outcome.  Rather, as when defense counsel defaults an appeal entirely by failing to file timely notice, the only possible impact is on the appeal.

Accordingly, when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.  *Cf. Clark v. Crosby*, No. 01-12940, slip op. 2937, 2946 n.9 (11th Cir. July 2, 2003) (defining "prejudice," in context of an ineffective assistance of appellate counsel claim as "the reasonable probability that the outcome *of the appeal* would have been different"); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990).  That means *Eagle*, not *Jackson*, should control this case.  We therefore must consider how Davis would have fared on appeal had counsel preserved a *Batson* claim for review.

On the same record now before us, Florida's Third District Court of Appeal expressly announced its view that Davis's *Batson* challenge was "well taken." *Davis*, 710 So. 2d at 724.  As this observation suggests, his claim is meritorious as a matter of law.  Davis established a prima facie case of racial discrimination with

12

respect to the second black juror's removal from the jury panel,[10] and the state failed altogether to rebut the inference thereby raised. Thus, the record shows a violation of the Equal Protection Clause. *See United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986) ("[U]nder *Batson*, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown.").

Both because Davis's *Batson* claim was meritorious and because the Third District recognized it as such, the only question as to the likely outcome of Davis's appeal, had counsel preserved the issue, is whether he would have been afforded a remedy. We believe that there is a reasonable probability that the Florida courts would have found the *Batson* violation to warrant automatic reversal. That is, the Florida Third District Court of Appeal or Supreme Court would have deemed "harmless error" review inapplicable in the context of *Batson* violations. This conclusion follows from several considerations.

---

[10]Davis established his prima facie case by objecting to the state's exclusion of a second African American venire member at a stage of voir dire when no African American had been seated among the first ten jurors accepted. The burden then shifted to the state to give a race-neutral explanation for its second strike of a black venire member. The state purported to do so by repeating the reason it had given for its first strike yet the record offers no indication whatsoever that this reason properly applied to the second black prospective juror as well.

To begin with, the United States Supreme has not suggested yet that the discriminatory exclusion of prospective jurors is subject to harmless error review. On several occasions, however, the Court has reversed convictions without pausing to determine whether the improper exclusion of jurors made any difference to the trial's outcome. *See Powers v. Ohio*, 499 U.S. 400, 416 (1991) (reversing and remanding based upon a finding that the defendant was wrongfully barred from raising a *Batson* claim); *Batson*, 476 U.S. at 100 (ordering that a conviction be reversed if the defendant, on remand, establishes a prima facie case of discrimination and the state fails to provide a neutral explanation for the challenged strikes). The Court has also required automatic reversal in the related context of discrimination in the selection of grand jurors. *Vasquez v. Hillery*, 474 U.S. 254, 263–64 (1986); *Rose v. Mitchell*, 443 U.S. 545, 556 (1979).

Further, the Court has expressly recognized that the discriminatory exercise of peremptory challenges harms interests in addition to the defendant's, namely, the interests of jurors themselves in not being improperly excluded from service and the interest of the community in the unbiased administration of justice. *See Georgia v. McCollum*, 505 U.S. 42, 48–50 (1992); *Powers*, 499 U.S. at 402; *Batson*, 476 U.S. at 87–88. Thus, the doctrine of third-party standing enables defendants to speak for improperly excluded jurors by raising *Batson* claims in

14

their stead, even when the defendant and the improperly excluded juror or jurors are not of the same race. *Powers*, 499 U.S. at 415–16. Also significant is the rule that a defendant is no more entitled than the state to exercise peremptory strikes on a racially discriminatory basis. *McCollum*, 505 U.S. at 59. Obviously, the harm proscribed by *Batson* must redound to interests beyond the defendant's if it constrains the defendant's own selection of trial strategies.

A substantial number of our sister circuits also have declined to apply harmless error analysis in reviewing *Batson* violations. *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998); *Ford v. Norris*, 67 F.3d 162, 170–71 (8th Cir. 1995); *Rosa v. Peters*, 36 F.3d 625, 634 n.17 (7th Cir. 1994) (explaining that Supreme Court precedent supports a conclusion that the harmless error analysis does not apply to *Batson* violations); *United States v. Thompson*, 827 F.2d 1254, 1261 (9th Cir. 1987); *cf. Ramseur v. Beyer*, 983 F.2d 1215, 1225 n.6 (3d Cir. 1992) (en banc) (noting, in challenge to a grand jury's selection, "that harmless error analysis is inappropriate in cases involving discrimination in the jury selection process").

Consequently, there is a reasonable probability that the Florida Third District Court of Appeal would have reversed Davis's conviction had trial counsel preserved a *Batson* challenge. Because we believe that the likelihood of a different outcome on appeal is the appropriate focus of our inquiry under

15

*Strickland* and *Flores-Ortega*, we hold that the district court should grant Davis a writ of habeas corpus conditioned on the state's provision of either a new trial or an opportunity to take an out-of-time appeal wherein his freestanding *Batson* challenge could be decided by the state courts on the merits. *Compare Eagle*, 279 F.3d at 944 (remanding "with instructions to issue a writ of habeas corpus conditioned on the State's right to provide Eagle a *new trial* within a reasonable period of time" (emphasis added)), *with Pressley v. Wainwright*, 540 F.2d 818, 819 n.2 (5th Cir. 1976) (ordering the state "either to allow a belated application for certiorari or to set aside the conviction and grant a new trial within a reasonable time," in a case granting habeas relief on the basis of counsel's ineffectiveness in protecting a client's right to seek review in the Florida Supreme Court).

## CONCLUSION

Accordingly, we VACATE the district court's order denying Davis habeas corpus relief and REMAND this case for further proceedings consistent with this opinion.