[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14963
Non-Argument Calendar

_____

D. C. Docket No. 00-14015-CV-DLG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 24, 2005
THOMAS K. KAHN
CLERK

RICHARD MARION BROWER,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS, Secretary of Florida
Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 24, 2005)

Before TJOFLAT, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Richard Brower appeals the district court's denial of his petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. Brower was convicted of murder by a jury in a Florida state court. His conviction was affirmed on direct review and his petition rejected by state collateral proceedings. On appeal, Brower raises six arguments, which we will address in turn.

### I. Standard of Review

As amended by AEDPA, 28 U.S.C. § 2254 states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

According to Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000),

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13, 120 S. Ct. at 1523. The phrase "clearly established Federal law," as

that term appears in section 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412, 120 S.Ct. at 1523. Furthermore, a habeas petitioner can overcome a state court's "presumption of correctness" on factual determinations only by coming forth with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As a general rule, in reviewing a district court's grant or denial of a habeas petition, we review the district court's findings of fact for clear error, and review de novo both questions of law and mixed questions of law and fact. Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000). In this case, because the district court "neither held an evidentiary hearing nor made any independent findings of fact[,]" we review its holdings de novo, mindful that "we (like the district court) are reviewing, in essence, [the] decision[s] of the courts of [Florida]." Putman v. Head, 268 F.3d 1223, 1240 (11th Cir. 2001).

## II. Discussion

### A. Deprivation of a Fair Trial Because of Jury Misconduct

Brower argues that he was deprived of a fair trial because of jury misconduct when they were being impaneled and when the trial court denied his motion to dismiss the entire jury pool based on the comments made by members

3

of the panel. Specifically, a friend of Brower's overheard potential jurors' comments that suggested they already had decided he was guilty. He also points to incidents of juror misconduct that took place during the trial: two jurors had conversations with State witnesses, one juror was seen reading a newspaper with coverage of the trial on the front page, and the husband of one juror was present during all of the proceedings, even during times when the jury was not present.

Brower argues that his case is similar to United States v. Heller, 785 F.2d 1524 (11th Cir. 1986), where this Court granted a new trial because members of the jury had made anti-Semitic remarks during the trial that suggested they were impartial. The trial judge learned of the remarks after the jury had been deliberating for one day. In response, the judge questioned each of the jurors individually about what occurred and asked each individually if, in light of what had occurred in the jury room, he or she would be able to reach a decision based on the evidence and the law. After all had said that they could, he reconvened the jury and asked them to confirm their earlier promises. This Court rejected the trial judge's handling of the matter, determining that merely asking the jurors what the remarks were and if they were affected by prejudice, without probing into the nature of the remarks, meant that it was not possible to know the extent of prejudice displayed. 785 F.2d at 1527. Even though the remarks may have been

intended as humor, the individuals making them and those laughing at them "displayed the sort of bigotry that clearly denied the defendant Heller the fair and impartial jury that the Constitution mandates." Id. The Court also held that reversal could be granted in the alternative on the basis of one juror's remark to another that the defendant was guilty, before the defense had even presented its case, and on a general presumption of guilt among many of the jurors. Id. at 1528. Again, the Court emphasized the trial court's lack of probing investigation during the voir dire. Id.

This Court has described the amount of discretion available to the trial judge regarding jury impropriety as being very broad.

> The most salient aspect of the law in this area is the breadth of discretion given to judges who are called upon to deal with the possibility of juror misconduct. District court judges deal with jurors on a regular basis, and those judges are in the trenches when problems arise. The problems that present themselves are seldom clearly defined and a number of variables have to be considered. There are often no obviously right or wrong answers to the questions that arise. For all of these reasons, a trial judge is vested with broad discretion in responding to an allegation of jury misconduct, and that discretion is at its broadest when the allegation involves internal misconduct.

United States v. Dominguez, 226 F.3d 1235, 1246 (11th Cir. 2000).

We cannot conclude that the trial court abused its discretion in the manner in which it dealt with the potential jurors. First of all, the situation is different

here than it was in <u>Heller</u>. When the issue of the inappropriate comments was raised to the trial court by Brower's friend, the court began questioning individually the potential jurors identified. Not only were they asked about what they said but what was said by others. The court heard testimony from the deputy clerk, who reported that she had not heard any remarks suggesting that the potential jurors had already made up their minds about Brower's guilt but had noticed that the group did not seem to be taking the matter seriously. This conformed with the testimony of the one potential juror whom Brower's friend identified as making inapproprate remarks and who remained in the jury pool; the juror testified that the group was tired and making remarks in jest about the proceedings. Thus, unlike the judge in <u>Heller</u>, the judge here ascertained the nature of the comments made and did not just make the bald inquiry about whether the potential jurors were prejudiced. Instead, the judge permitted extensive inquiry into the nature of the remarks to determine their effect. Therefore, we agree with the district court that this situation is not like the one in <u>Heller</u>, and that the trial court did not permit a biased jury to proceed.

Moreover, the inappropriate remarks in this case occurred during voir dire, not during deliberations, as in <u>Heller</u>. Because of that timing, Brower's counsel was able to have some of the potential jurors dismissed. Indeed, the state court

6

found as a fact that "[n]one of the offending jurors served." Brower v. State, 727 So.2d 1026, 1027 (Fla.App. 4 Dist. 1999). In addition, that court also found that "[n]either side wanted to strike Rabbit." Id. at 1026.[1] There is no clear and convincing evidence that these findings of fact are erroneous.

Likewise, the trial court's handling of the other incidents of juror misconduct were not an abuse of discretion. The court investigated each incident and questioned the jurors who were implicated. In all cases, the court determined that the incidents did not rise to the level of causing the jury to be rendered impartial, and we agree. One juror was congratulated by the victim's mother on becoming a grandmother; this did not clearly relate to the case. Another juror asked a witness a question about the location of the murder weapon; while this was clearly related to the case, the witness did not reply. One juror was seen reading a paper which contained extensive trial coverage; the juror denied reading the article about the trial and the person who reported the incident did not testify that she had seen the juror read the article. Likewise, Brower argues that one juror's husband was present during the entire trial. However, in both of these incidents, Brower has not presented any evidence that anything untoward

---

[1] Rabbit was the only juror who actually served who was ever alleged to have made an offending remark. And the state court found that he did not do so, and moreover, that neither side wanted to strike him.

occurred. The court admonished the jury not talk to witnesses or read any media coverage. In light of the court's attention to the reported improprieties, we cannot conclude that the court abused its discretion or that Brower was denied a fair trial.

For all of these reasons, we cannot conclude that the decision of the state court was either contrary to clearly established federal law, or an unreasonable application thereof, or an unreasonable determination of the facts.

### B. Ineffective Assistance of Counsel For Failure to Preserve Error

Next, Brower argues that he was denied effective assistance of counsel when his attorney did not timely raise his claim under Coney v. State, 653 So.2d 1009 (Fla. 1995). Under Coney, a criminal defendant must be present at the bench during the exercise of peremptory challenges or must expressly waive that right. Brower's attorney neglected to raise the issue until after the trial concluded and Brower was found guilty. Only in a motion for new trial did Brower's attorney make the argument. On direct appeal, the court of appeals granted Brower a new trial on that issue, but the Florida Supreme Court reversed that decision because Brower had not preserved the error. Brower argues that this failure to preserve constituted ineffective assistance of counsel and that this court should use the analysis found in Davis v. Secretary for the Department of Corrections, 341 F.3d 1310 (11th Cir. 2003), when analyzing the prejudice prong of the Strickland

analysis.

In order to succeed with a challenge based on ineffective assistance of counsel, a petitioner has to satisfy a two-part test.  First, the petitioner must show that counsel's performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  This means that the petitioner must show that the representation provided by counsel was outside the "wide range of competent assistance" and he must also overcome the presumption of competence. Id. at 690, 104 S.Ct. at 2066.  In analyzing counsel's competence, the court must apply a "heavy measure of deference to counsel's judgments."  Id. at 691, 104 S.Ct. at 2066.  Second, the petitioner must show that the performance prejudiced the defense, so that the result of the trial is not reliable. See id.   To satisfy this test, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S.Ct. at 2068.  Furthermore, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, see id., or vice versa.

In Davis, this Court looked at the prejudice prong in light of the effect of

9

counsel's incompetence on the appeal. There, the attorney objected to the prosecution's exercise of its peremptory challenges to jurors based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986), but failed to renew his objection before the swearing in of the jury. By failing to renew the objection, the counsel failed to preserve the error for review. 341 F.3d at 1312 n.3. This Court, looking at the prejudice prong, determined that because the performance error only affected his appeal, "the only effect of *trial* counsel's negligence was on Davis's *appeal*." Id. at 1315 (emphasis in original). Therefore, the Court did not employ the standard Strickland prejudice inquiry of whether there was a reasonable likelihood that the trial's outcome would have been different had the error not occurred, but rather looked at whether the appeal's outcome would have been different. Id. at 1316.

We agree with the district court that Davis is not applicable here. In this case, Brower's counsel did not raise the issue until after Brower was convicted, thus denying the trial court the opportunity to remedy the error. Additionally, Brower argued below that the outcome of the trial might have been different had he been allowed to participate in the jury selection. Therefore, this is not a deficiency that only affected Brower's rights on appeal. For that reason, we do not look to the effect of the error on Brower's appeal but, rather, its effect on the

10

trial's outcome. Brower has not shown that the error had an effect on the trial's outcome, let alone a reasonable likelihood that the outcome would have been different. Therefore, we reject this claim.

### C. Ineffective Assistance of Counsel for Failure to Call Witnesses

Brower also argues he was denied effective assistance of counsel when his trial counsel did not call two witnesses. One of the witnesses, a forensic expert, would have provided testimony that, based on the trajectory of the bullets, the shots must have been fired by a taller person. This witness would have also called into question the veracity of the information gleaned from the crime scene investigation. The other witness would have impeached the testimony of the government's star witness. Brower argues that he suffered prejudice because this testimony would have undermined the government's circumstantial evidence of his guilt.

As discussed above, an appellant must show both incompetence and prejudice in order to succeed with a claim of ineffective assistance of counsel. We agree with the state habeas court and the district court that Brower cannot show prejudice. "[T]he absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt." Fortenberry v. Haley, 297 F.3d 1213, 1228 (11th Cir. 2002) (rejecting

11

petitioner's ineffective assistance of counsel argument on lack of prejusel

grounds despite "no conclusive forensic or eyewitness evidence" because of

petitioner's "multiple uncoerced confessions").  As the court of appeals stated on

direct appeal, Brower's guilt was supported by "overwhelming evidence."  Brower

v. State, 684 So.2d 1378, 1378 (Fla. 4th DCA 1996).  As the state habeas court

elaborated:

> The Defendant made several incriminating statements to various law
> enforcement officers.  At the time that he was taken into custody in
> South Carolina, he volunteered statements that he killed the people in
> Florida.  When one of the police officers asked where the murder
> weapon was located, Brower answered that the threw it on the couch,
> and that it was same gun he used to kill Sandie and John Cassidy.
> After his arrest, the Defendant volunteered another statement while
> being transported to the jail facility, to the effect that the State of
> Florida would "fire me up when they get me back for this."

Opinion at 5.  The court also recounted the testimony of two witnesses at trial to

whom Brower had confessed the crimes.  In light of this overwhelming evidence,

we conclude Brower cannot show prejudice.

### D.  Ineffective Assistance of Counsel Because Counsel Changed Five Times

Next, Brower argues that he was denied effective assistance of counsel

because his defense counsel changed five times during the course of pretrial

proceedings.  He argues that his four-week trial was more complex than that found

in the case relied upon by the district court, Trice v. Ward, 196 F.3d 1151, 1160

12

(10th Cir. 1999).  However, although Brower argues that Trice was less complicated than his case, Trice also confessed.  Additionally, the attorney's purported lack of preparation had no bearing on the pretrial juror misconduct and juror misconduct during the trial.  In sum, we agree with the district court that the nine months that Smith served as counsel were sufficient.  And, as mentioned above, in light of the overwhelming evidence of guilt, Brower cannot show that the outcome of the trial would have been different.

E.  Due Process Rights Violated Because of Denial of Access to the Crime Scene

Brower argues that his due process rights were violated when his defense counsel was denied access to the crime scene for investigation.  He disputes the district court's conclusion that the overwhelming evidence of guilt rendered his lack of access to the crime scene irrelevant because "[t]he State relied heavily upon the crime scene evidence to support its theory that Mr. Brower committed first degree murder."  However, although the government did rely upon the crime scene evidence, it also relied heavily upon the testimony about the multiple confessions.  That evidence rendered any evidence garnered from the crime scene unable to create "a reasonable likelihood" of "affect[ing] the judgment of the trier of fact."  United States v. Valenzuela-Bernal, 458 U.S. 858, 874, 102 S.Ct. 3440,

13

3450 (1982).

F.  Sufficiency of the Evidence

Finally, Brower argues that there was insufficient evidence presented for the jury to find him guilty.  "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).  We summarily reject Brower's argument in light of the Florida Court of Appeals statement that the evidence presented in this case was overwhelming.

For the reasons stated in the body of this opinion, the decision of the district court is

**AFFIRMED.**[2]

---

[2]  Brower's request for oral argument is denied.