Julio Cesar BELLIZIA, Petitioner,

v.

Walter A. McNEIL, Secretary, Florida Department of Corrections, Respondent.

Case No. 08–20730–CIV.

United States District Court, S.D. Florida.

July 14, 2009.

Julio Cesar Bellizia, Okeechobee, FL, pro se.

Michael C. Greenberg, Davie, FL, Richard L. Polin, Attorney General Office, Miami, FL, for Respondent.

***ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (D.E. 1)***

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Patrick A. White ("Report," D.E. 24), issued on January 9, 2009, recommending that Petitioner Julio Cesar Bellizia's Petitioner for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 be denied. Petitioner filed Objections (D.E. 27) to the Report on February 23, 2009. The Court issued an Order to Show Cause (D.E. 28) on June 3, 2009. Respondent filed a Response to the Order to Show Cause (D.E. 29) on June 15, 2009. Having reviewed the Report, the Objections, and the Response to the Order to Show Cause, the Court finds as follows.

**I. Factual and Procedural Background**

Petitioner was admitted to the hospital after collapsing at Miami International Airport. X-rays taken of Petitioner's abdomen revealed the presence of numerous foreign objects, causing hospital personnel to notify law enforcement authorities. Cylpha Obando, a registered nurse assigned to the Critical Care Unit, was responsible for monitoring Petitioner's condition. At one point Petitioner's blood oxygen was so low that physicians needed to intubate him (i.e., put a tube into his airway) and place him on a respirator.

When Petitioner ultimately awakened, he began to cough. His coughing caused him to expel a blue plastic pellet filled with a beige creamy substance. Nurse Obando placed the pellet into a biohazard bag and notified her supervisor. When Nurse Obando asked Petitioner about the pellet, he wrote her a note in Spanish about a son and sick mother. Shortly thereafter, Officer Eddie Avila responded to the hospital and Nurse Obando produced the expelled pellet and Petitioner's backpack that contained passports, clothing, plane tickets, and Venezuelan currency. Officer Avila placed Petitioner under arrest, and the property was submitted to the property unit.

The following day, an exploratory laparotomy was performed and 32 cylindrical pellets, which were four inches long and two inches wide, were removed from Petitioner's stomach. X-rays also revealed seven foreign objects in the large bowel. Due to the risk of infection, doctors decided to not surgically remove the pellets but to let Petitioner pass the remaining pellets naturally. Petitioner ultimately passed four pellets that resembled a latex glove,

and all pellets recovered were tendered to law enforcement.

Petitioner was charged by information with trafficking in illegal drugs in violation of Florida Stat. 893.135(1)(c)(1)(c).[1] (D.E. 15; App. B.) Specifically, the information alleged that Petitioner was in actual or constructive possession of 28 grams or more but less than 30 kilograms of various illegal substances, including heroin. (*Id.*)

The defense at trial was one of duress. Petitioner maintained that he had acted as a drug mule to protect his brother and/or mother whose lives had been threatened by drug traffickers.

Criminalist Caroline Milanes testified as a government witness at trial. Milanes was responsible for weighing and testing the contents of the pellets removed from Petitioner's stomach. In testing the contents, Milanes took the plastic off of only one of the pellets; the substance inside the pellet was tested and identified as heroin. (Tr. at 435–36.) Milanes then weighed the remaining pellets with their plastic coverings on, but did not test the substance inside the remaining pellets. (Tr. at 436–38.) Milanes calculated the weight of the rest of the pellets by weighing the plastic covering of the single "unwrapped pellet." (Tr. 437.) She then assumed that all the pellets were wrapped the same way and that each pellet's plastic covering weighed the same. (Tr. 437.) The total weight of all the pellets, minus the assumed weight of all the plastic coverings, was 291.2 grams. (Tr. at 435.)

Following the close of the government's case, Petitioner's counsel moved for acquittal based on the government's failure to make a prima facie case. (Tr. 449–50.) The motion was denied. Petitioner's counsel also moved for a judgment of acquittal again following the close of Petitioner's case. Petitioner's counsel argued that the criminalist Caroline Milanes had failed to specifically identify the powder in the tested pellet as "heroin." (Tr. 600–02.) Petitioner's counsel did not raise the argument that the criminalist had failed to test the contents of the other 35 pellets, still wrapped in their plastic. The motion for judgment of acquittal was denied.

The case was sent to the jury, and the jury convicted Petitioner of the charged offense. (D.E. 15; App. A, C.) He was sentenced to a mandatory minimum term of imprisonment of twenty-five years. (D.E. 15; App. D.) Petitioner prosecuted a direct appeal from his conviction, raising the following sole claim: "The prosecutor's improper closing argument, which was approved by the trial judge, advising the jury that Defendant had the same burden of proof as the State in this case and that he had to prove his defense of duress denied Defendant a fair trial." (D.E. 15; App. E.) The Florida Third District Court of Appeal affirmed Petitioner's conviction and sentence in a per curiam decision without written opinion. (D.E. 15; App. G).

Petitioner also pursued postconviction relief in the State courts, first challenging his conviction and sentence by way of a pro se motion with supporting exhibits pursuant to Fla. R.Crim. P. 3.850. (D.E. 15; App. H). The trial court denied Petitioner postconviction relief. Although Petitioner argued in his motion that his attor-

---

1. Fla. Stat. 893.135(1)(c)(1)(c)(2002) provides *in relevant part:*

Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 4 grams or more of … heroin … commits a felony of the

first degree, which felony shall be known as "trafficking in illegal drugs".... If the quantity involved … [i]s 28 grams or more, but less than 30 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years and pay a fine of $500,000.

ney was ineffective for failing to move for a judgment of acquittal based on the State's failure to test every pellet, the trial court found that Petitioner's trial attorney had preserved any issue regarding the sufficiency of the evidence. Therefore, the trial court denied Petitioner's claim because he failed to raise it in his direct appeal.[2]

Petitioner took an appeal from the trial court's ruling and the denial of postconviction relief was per curiam affirmed without written opinion. (D.E. 15; App. K). Petitioner's motion for rehearing was denied. (D.E. 15; App. L.) He next unsuccessfully challenged his sentence in a *pro se* motion to correct illegal sentence with attached exhibits pursuant to Fla. R.Crim. P. 3.850, claiming that his conviction and mandatory minimum sentence was violative of the principles established in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). (D.E. 15; App. M, N, P, Q.) Petitioner then came to this Court, filing the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* D.E. 1.)

## II. The Petition and Report

Petitioner argues nine grounds for relief in his Petition; only two of the grounds for relief are valid, and therefore, will be the only ones addressed herein. Petitioner contends in his two valid claims that he received ineffective assistance of counsel: (1) when his lawyer failed to move for a judgment of acquittal based on the insufficiency of the State's evidence as a matter of law to sustain the conviction and imposition of a twenty-five-year mandatory term of imprisonment, due to the State's failure

to test each pellet for heroin; and (2) when his lawyer failed to challenge as insufficient the evidence presented by the State's criminalist.

Magistrate Judge White rejected both of these claims. First, Magistrate Judge White found that Petitioner's counsel had addressed the sufficiency of the evidence in the two motions for judgment of acquittal. Accordingly, the Magistrate Judge found that Petitioner could not prove that his counsel was deficient. Second, the Magistrate Judge found that, even if his counsel's performance was deficient, he did not suffer prejudice, because Florida law allows the random positive testing of a sample of a suspected illegal substance which was commingled with other similar-looking substances. Magistrate Judge White relied on opinions from Florida's Third District Court of Appeals regarding random testing of marijuana and pills. (D.E. 24 at 16–17 (citing *Ross v. State*, 528 So.2d 1237, 1240 (Fla. 3 DCA 1988); *Asmer v. State*, 416 So.2d 485, 486 (Fla. 4 DCA 1982))).

## III. Discussion

As discussed in greater detail below, Petitioner has presented a valid claim for violation of his Sixth Amendment right to effective assistance of counsel. Controlling case law in Florida's Third District Court of Appeals requires that the State must weigh each individually wrapped package of powder drugs to satisfy the minimum statutory weight for trafficking convictions. Petitioner trial counsel's failure to raise the State's failure to weigh every pellet recovered from Petitioner was constitutionally deficient representation and prejudiced Petitioner. Finally, Peti-

---

**2.** While federal courts typically must give deference to State court adjudications of claims in a habeas petition *see* 28 U.S.C. § 2254(d)(1), such deference is not required if the State court failed to address the merits of a claim asserted by the petitioner. *See Davis v. Sec'y for the Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir.2003)

tioner has overcome the procedural default for failing to raise these claims on direct appeal.

**A. *Ross v. State* mandates that the State must weigh each individually wrapped package of powder drugs to satisfy minimum statutory weight**

The relevant law governing Petitioner's claims comes from *Ross v. State*, 528 So.2d 1237 (Fla. 3 DCA 1988). In *Ross*, the defendant was arrested and charged with trafficking in cocaine under Florida Stat. 893.135(1)(b), after police recovered a brown paper bag thrown away by defendant containing two bundles. One of these bundles contained 36 separately wrapped, plastic packets of white powder. *Id.* at 1238. The second bundle contained fifty-six separately wrapped, plastic packets of white powder. *Id.* The State tested only two of 92 packets, one from each bundle, and then attempted to include the weight of the contents of all 92 packages to support a trafficking conviction. *Id.* at 1241.

The Third District Court of Appeals reversed the conviction and held that, when a defendant is charged with cocaine trafficking, and the subject cocaine is contained in a series of separately wrapped packets, the government does not satisfy its burden of proving that the cocaine satisfies the minimum statutory weight by chemically testing only one of the packets and then visually examining the contents of the remaining packets:

> It is essential in order to sustain a cocaine trafficking conviction that each packet of white powder be chemically tested, by random sample, to contain cocaine, and that the total weight of the material in the tested packets equal or exceed twenty-eight (28) grams; a visual examination of untested packets of this weight is insufficient to convict because the white powder contained therein may be milk sugar or any one of a vast variety of other white powdery chemical compounds not containing cocaine. Moreover, the fact that one or two packets containing cocaine are found among other packets containing similar-looking white powder is no assurance that the latter untested packets also contain cocaine in view of (1) the vast number of other chemical compounds which have a similar white powdery appearance, and (2) the fact that the material in the untested packets was not commingled with the material in the tested packets.

The court in *Ross* specifically distinguished its decision from those decisions allowing the random positive testing of one suspect illegal pill commingled in a single packet containing other similar-looking pills, as in *Asmer v. State*, 416 So.2d 485 (Fla. 4th DCA 1982), or the random positive testing of a sample of suspect marijuana commingled in a single bag containing similar-looking material, as in *Kenny v. State*, 382 So.2d 304 (Fla. 1st DCA 1978), and *Wright v. State*, 351 So.2d 1127 (Fla. 1st DCA 1977). The difference is that

> the random positive samples of suspect illegal pills or suspect marijuana is taken from a single packet or bag and is thus commingled with other similar-looking material. It is therefore a fair inference that the latter, similar-looking, commingled material is the same as the random positive sample taken therefrom. One cannot, however, make a similar inference where the untested material is not commingled with the random sample-as where the untested suspect illegal pills, marijuana, or cocaine is contained in a separately wrapped package from which a random sample is not taken for testing.

*Id.* at 1240. The Third DCA has extended the holding of *Ross* to heroin. *See State v. Clark*, 538 So.2d 500 (Fla. 3 DCA 1989).

## B. Petitioner's counsel was constitutionally deficient for failing to challenge the testing procedures for the subject heroin.

### 1. The merits of Petitioner's claim

 Petitioner's claim of ineffective assistance of counsel has merit. In this case, the subject heroin for which Petitioner was convicted was allegedly contained in 36 separate "pellets," i.e., plastic balloons. The chemist/criminalist Caroline Milanes testified at trial that she had only tested one of the 36 pellets for heroin. Following a positive test for heroin in that individual pellet, she weighed the other pellets, but did not remove the plastic casing from the other pellets or conduct any additional tests to determine whether the other pellets contained heroin. The weight of all the pellets, including the pellets that did not have their contents tested, was admitted as evidence to prove that Petitioner was in possession of more than 28 grams of heroin. This was improper under *Ross*, which, as outlined above, requires that, with respect to powder drugs wrapped in separate packaging, a sample must come from each package in order to have the amount in each container included in the total alleged amount of contraband.[3]

---

**3.** Respondent contends in his Response to the Court's Order to Show Cause that *Ross* is distinguishable from the facts presented in the Petition. (*See* D.E. 29.) Respondent makes four arguments in his attempt to distinguish the instant facts from *Ross*.

First, Respondent argues that *Ross* only applies to street level drug distribution, not the transportation and smuggling of heroin at the wholesale level prior to being processed for street level distribution. Respondent argues that this is a relevant and actual distinction because there was a fair inference in *Ross* that the substance was not cocaine, but instead was counterfeit, as selling counterfeit cocaine is a common practice in street level distribution. Respondent cites no legal authority for its position and the Court is extremely reluctant to carve out such a large exception to Florida state law on its own accord.

Second, Respondent argues that *Ross* is inapplicable to the instant facts because *Ross* involved a situation in which *"no fair inference* could have been made that the untested material contained cocaine." (D.E. 29 at 6 (emphasis supplied).) Respondent argues that, in the case of heroin mules, the inference is that the substances recovered from the mule's stomachs is heroin, and that it would be highly unlikely not to be heroin. The Third DCA in *Ross* held that a fact finder could not make a fair inference that untested material is the same as randomly tested material where the untested material is not commingled with the random sample—"as where the untested suspect illegal pills, marijuana, or cocaine is contained in a separately wrapped package from which a random sample is not taken for testing." 528 So.2d at 1240. There is nothing from the opinion in *Ross* from which the Court could extrapolate that drugs recovered from a mule are distinguishable from drugs seized under any other circumstance. As such, again, the Court declines to make such a distinction without any supporting legal authority.

Third, Respondent argues that the substance tested in the instant case was more akin to "rock" cocaine than powder cocaine, and therefore, as rock cocaine is not subject to the separate testing requirements of *Ross*, see *Bond v. State*, 538 So.2d 499 (Fla. 3d DCA 1989), the holding of *Ross* does not apply to the instant case. Respondent's argument fails because he cannot point to any record evidence to support his assertion that the substance inside the pellets was in rock form. Instead, while it is admittedly not particularly clear on the issue, the record suggests that the substance inside the pellets was more akin to powder drugs than rock drugs. For example, Nurse Obando testified that the substance inside the regurgitated pellet was "like a creamy thing, like beige to yellowish color inside." (Tr. 299.) Additionally, Dr. Rodriguez, the surgeon, testified that when she operated on Petitioner, she pulled out whole pellets, as well as "fragments." (Tr. 377.) Although her testimony is not completely clear, the most logical interpretation of Dr. Rodriguez's testimony is that she was referring to the plastic coverings of pellets that had ruptured, and that the contents of the ruptured pellets had dissolved into his stomach and caused him to become sick. The Court finds that the strongest inference from Dr. Rodriguez's testimony is that the sub-

Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant can succeed on an ineffective assistance of counsel claim if he proves that: (1) his counsel was deficient, i.e., he made errors so serious that counsel was not functioning as guaranteed under the Sixth Amendment; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Concerning the deficiency prong, the Eleventh Circuit has stated that "review of counsel's performance must be highly deferential," and courts should "avoid second-guessing counsel's performance." *Osborne v. Terry,* 466 F.3d 1298, 1305–06 (11th Cir.2006). Thus, to establish deficient performance, a petitioner must "prove by a preponderance of the evidence that no competent counsel would have taken the action that his counsel did take." *Grossman v. McDonough,* 466 F.3d 1325, 1345 (11th Cir.2006). Concerning the prejudice prong, it is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Rather, a reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. 2052.

Counsel's failure to object or move for judgment of acquittal based on *Ross,* resulted in ineffective assistance of counsel under *Strickland.* Contrary to the finding of Magistrate Judge White, Petitioner's counsel failed to raise the violation of the rule in *Ross* in either of the motions for judgment of acquittal. The first motion for acquittal was a generic motion for acquittal based on the State's failure to prove a prima facie case. (Tr. 449–50.) The second motion challenged in a general manner the failure of the criminalist to testify as to the analysis she conducted to determine that the single pellet that was tested contained heroin. (Tr. 600–02.) But Petitioner's counsel did not mention *Ross* or otherwise make any argument as to the criminalist's failure to test the contents of each of the 35 wrapped pellets. No competent counsel—that is, no counsel that was aware of the law—would have failed to argue that the weight of the heroin allegedly possessed by Petitioner was illegally calculated. Thus, Petitioner's trial counsel's performance was constitutionally deficient.

■ Additionally, the prejudice suffered by Petitioner is apparent. Assuming that all the pellets were roughly the same size and there were 36 pellets in evidence, each pellet weighed less than ten grams (291

---

stance was in powder form and dissolved in his stomach after the plastic coverings of the pellets had ruptured. Finally, as noted above, the Third DCA has extended the holding of *Ross* to heroin. *See State v. Clark,* 538 So.2d 500 (Fla. 3 DCA 1989). Respondent has pointed to no cases distinguishing "rock" heroin from "powder" heroin.

Respondent's last argument is that Petitioner admitted during the trial that he had swallowed plastic pellets containing heroin as part of his defense at trial of duress. Respondent argues: "Since Petitioner not only failed to dispute during trial that the substance recovered was heroin, but expressly admitted that it was; Petitioner cannot now claim that the State failed to prove that the substance was

heroin." (D.E. 29 at 16.) The Court disagrees for two reasons. *First, Petitioner's* claim in the instant Petition is ineffective assistance of counsel; as such, Respondent's argument that his counsel argued duress at trial completely misses the point of Petitioner's claim. *Second,* it was the State's burden at trial, not Petitioner's, to prove that the substance in the pellets was heroin and weighed over 28 grams, and besides passing references in opening and closing arguments, there is no indication in the record that Petitioner formally stipulated that all of the substance in the pellets was heroin.

Accordingly, Respondent's attempts to distinguish *Ross* from the facts of the instant Petition fail.

grams divided by 36 pellets). As only one pellet was admissible to determine the statutory weight (the pellet that the criminalist had tested), had Petitioner's trial counsel challenged the State's failure to test the contents of all the pellets, the State would not have been able to establish Petitioner's possession of the requisite 28 grams and at most he would have been convicted of a lesser offense. That would have resulted in a reduction in the charged offense and a far less substantial sentence. *See Ross*, 528 So.2d at 1241 ("Based on the applicable law, as stated above, the defendant's conviction for trafficking in cocaine must be reversed because the state failed to prove that the defendant was in possession of a mixture of cocaine weighing twenty-eight (28) grams or more. The state did establish, however, that the defendant was in possession of a mixture of cocaine weighing less than twenty-eight (28) grams based on the two (2) packets, seized from the defendant, which Mr. Bodie subsequently tested positive for cocaine. Accordingly, the trial court erred in denying the defendant's motions for judgment of acquittal at trial because the charge should have been reduced to simple possession of cocaine.").

## 2. Overcoming the procedural default

Petitioner's appointed counsel in his direct appeal also failed to raise the issue of the State's failure to test the contents of all the pellets found in Petitioner's stomach in violation of *Ross*. Accordingly, the trial court, in ruling on Petitioner's motion for post-conviction relief—the first time that Petitioner raised this specific claim—found that Petitioner was barred from collaterally attacking his sentence and conviction on this claim.

■ Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else

the defendant is barred from presenting that claim in a habeas proceeding. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir.2001); *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir.1998); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir.1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)

■ "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate ... 'cause' and actual 'prejudice' ...." *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *accord Black v. United States*, 373 F.3d 1140, 1142 (11th Cir.2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. § 2255 challenge.").

■■ Ineffective assistance of counsel may satisfy the cause exception to a procedural bar. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir.2000) (citations and quotation omitted). In order to do so, however, the claim of ineffective assistance must have merit. *Id.* To determine whether it does, the Court must decide whether the arguments Petitioner alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal. *Id.* "The most direct way to approach this question is to examine the alleged trial errors to see if they contain sufficient merit-actual or arguable-that his appellate counsel can be faulted for not having raised them." *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir.1988) (quotation and ellipses omitted).

■ As the Court has found that Petitioner's claim of ineffective assistance has merit, and would clearly have affected the

outcome of his appeal, Petitioner has demonstrated cause and prejudice to overcome the procedural default rule.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Objections to the Report and Recommendation of Magistrate Judge Patrick A. White (D.E. 24) are **GRANTED.**

2. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (D.E. 1) is conditionally **GRANTED,** subject to paragraphs 3 and 4 below.

3. Respondent is directed to forthwith take all action necessary to ensure that the State trial court is apprised of this Order and that counsel is appointed to represent Petitioner.

4. The State trial court is directed to forthwith take all action necessary to remedy the constitutional violation addressed herein.[4]

5. Respondent, no later than September 1, 2009, shall notify the Court as to the date of the resentencing or other disposition of Petitioner's case.

6. The Clerk of Court shall enter judgment accordingly and close this case.

7. Additionally, the Clerk of Court is directed to serve certified copies of this Order to the parties listed below.

---

**4.** The Court declines to mandate the precise remedy to be applied by the State court. *See Barry v. Brower,* 864 F.2d 294, 300 (3d Cir. 1988) ("Both the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation. . . . The respect due the tribunals of a sovereign state within our federal system . . . requires that its courts be given an opportunity to correct their own errors.").