[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-17167
Non-Argument Calendar

_____

D. C. Docket No. 05-20318-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL SIMPKINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 18, 2007)**

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Nathaniel Simpkins appeals his convictions, imposed pursuant to a jury verdict, for conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 2113(a); armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d); and use of

a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). On appeal, Simpkins argues that the district court erred by (1) admitting testimony, as inextricably intertwined with the instant charges, that Simpkins had previously participated in a bank robbery other than the one charged in the indictment; (2) denying his motion for judgment of acquittal, in which he argued the evidence, including the testimony of two co-conspirators whom Simpkins says were not credible, was insufficient to convict him; (3) denying his request to call certain witnesses in order to impeach his co-defendant's testimony; and (4) overruling his objections to the government's closing arguments. After careful review, we affirm.

I.

We review the district court's rulings on the admissibility of evidence for abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "An evidentiary ruling will stand unless the complaining party has shown a substantial prejudicial effect." United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir. 2004) (quotation marks omitted). "An error on an evidentiary ruling will result in reversal only if a party establishes a substantial prejudicial effect or a manifest injustice." U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1286 (11th Cir. 2001).

2

As for Simpkins's challenge to the sufficiency of the evidence, our review is de novo. United States v. Dodds, 347 F.3d 893, 900 (11th Cir. 2003). In reviewing the sufficiency of the evidence, we resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict and will uphold the jury's verdict if a reasonable factfinder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995).

Finally, we review claims of prosecutorial misconduct de novo. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir.), cert. denied, 127 S. Ct. 1305 (2006).

## II.

The relevant facts are straightforward. On April 15, 2005, Simpkins and co-defendants Curtis Brown, Tinnell Prentice Irving, and Anthony Donnell Rose were indicted for conspiracy to commit armed bank robbery (Count 1), in violation of 18 U.S.C. § 2113(a), and armed bank robbery (Count 2), in violation of 18 U.S.C. § 2113(a), (d). Simpkins, Brown and Irving were also charged with use of a firearm in furtherance of a crime (Count 3), in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Brown and Rose entered guilty pleas, and Brown subsequently

3

testified for the government, as did co-conspirator Jeffrey Jenkins, at Simpkins's jury trial.[1]

Prior to trial, the government noticed Simpkins that it intended to introduce, pursuant to Rule 404(b) of the Federal Rules of Evidence, evidence that prior to the charged bank robbery, which occurred on March 23, 2004, Simpkins had participated in another bank robbery on March 3, 2004. Simpkins filed a motion to exclude the evidence, arguing that the government failed to identify its reasons for introducing the evidence or the relevancy of the evidence of the prior robbery. In response, the government asserted that the instant armed robbery occurred on March 23, 2004, and that Simpkins's involvement as the gunman in another armed robbery on March 4, 2004, less than three weeks before the instant one, was probative of identity, knowledge and absence of mistake. The district court denied without prejudice Simpkins's motion to suppress, finding that the relevancy of the proposed 404(b) evidence would depend on the theory of defense presented at trial.

At trial, Simpkins renewed his objection to the introduction of testimony regarding the prior bank robbery. The government responded that it intended to introduce co-defendant Brown's testimony that Simpkins was the driver in the charged robbery because he had been a gunman in the prior robbery but did not

---

[1]Co-defendant Irving was arrested and pled guilty after Simpkins was convicted.

4

feel that he had been paid enough to justify the danger associated with being a gunman in the charged robbery. The government argued that the evidence explained the relationships of the parties and, therefore, was not extrinsic evidence subject exclusion under Rule 404(b). The district court found that the evidence was inextricably intertwined with the charged offense and overruled the objection. In the alternative, the district court also found that the probative value of the evidence outweighed any prejudicial value.

As part of its case-in-chief, the government presented the following testimony. Rolando Riera, Jr. had previously been employed as a teller at Union Planters Bank, which later became a Region's Bank (the "Bank"). Riera testified that on March 23, 2004, while he was working at the drive-through window of the Bank, he observed four black males in a mint-colored Saturn pass through one of the lanes. Riera described the driver -- later identified as Simpkins -- as a heavyset black male with dreadlocks. Before seeing the car, Riera had heard customers talking about a suspicious vehicle with four black males in the parking lot. Another employee had started to send an e-mail to the Bank's security when two men -- later identified as co-defendant Irving and co-conspirator Jeffrey Jenkins -- came into the Bank and began yelling that there was a robbery.

Riera testified that Jenkins approached him, put a gun to his head, and began taking money from the teller drawer. Jenkins then told Riera to help put the money in a bag. Riera also put a dye pack -- a pack of twenty-dollar bills filled with paint that explodes upon removal from the bank -- in the bag. Jenkins directed Riera to empty two other teller drawers into the bag. Thereafter, Jenkins told Riera to get on the ground, at which time Riera was able to press the silent alarm. The robbers took a total of $30,245 from the teller drawers.

Jenkins, who had been convicted of three bank robberies and was then residing in a "holdover" facility for federal inmates, testified that Simpkins drove the car to the Bank on the day of the robbery and, at that time, wore his hair in dreadlocks. Jenkins said that before going to the Bank, he gave a gun to co-defendant Irving, and that Simpkins was in the car at that time. Upon entering the Bank, Jenkins initially went to the drive-through teller because Simpkins had told him that the drive-through teller had seen them and Jenkins was worried that the teller might already be calling the police. As they were leaving the Bank, the dye pack exploded and began burning them. Jenkins and Irving got in the car, and Jenkins told Simpkins to roll down the windows, but to keep driving. The men then went to Brown's mother's house, where they unsuccessfully attempted to

clean the dye off of the money in the washing machine. Jenkins paid Simpkins around $5000 for his participation in the robbery.

Judy Russell, Brown's mother, testified that, on March 23, 2004, she saw Simpkins at her house along with Brown, Jenkins, and Rose. One of them was carrying a bag and there was something red running from the washing machine. When she returned home from church later that day, she saw a bag with something red in it in the garbage can. When she asked what it was, Simpkins said it was his bag and took it from the garbage can.

Brown, who had been convicted of bank robbery and use of a firearm during a crime of violence, in connection with the March 23, 2004 robbery, testified that in putting together a group to rob the Bank, he called Simpkins first. Brown wanted Simpkins to be one of the gunmen, but he refused, stating that after a prior robbery, for which he was a gunman, he had received only $500 and felt like he had been cheated. For the instant robbery, Simpkins agreed to be the driver instead. Brown testified that while the Bank was being robbed, he, his cousin Jimmy, and Rose watched from a second vehicle, which served as the "look-out" car and was parked across the street from the Bank. After the robbery, the conspirators went to Brown's mother's house and unsuccessfully tried to wash the dye off of the money.

7

On cross-examination, Brown testified that pursuant to the plea agreement, he was pleading guilty to two counts of the indictment and the government had agreed to dismiss the other count. Brown stated that when he first spoke to the police, he did not tell them he was involved in the robbery, but he maintained that he had not lied to the police. When asked on cross-examination, Brown claimed that he did not remember telling law enforcement that he and his cousin were across the street but unaware that a robbery was occurring. In response, defense counsel presented Brown with a report from his interview with Federal Bureau of Investigation agents, but Brown claimed that the report consisted of the agents' impressions of what he said, rather than the statements themselves.

At the close of the government's case, Simpkins stated that, in order to impeach Brown's testimony, he intended to call one of the agents who had interviewed Brown and who he expected would testify that Brown had made false statements. The government responded that the report, referenced by Simpkins during Brown's cross-examination, said that Brown had admitted to involvement with the bank robbery. According to the government, the agent's testimony would be improper impeachment because Simpkins had failed to show that Brown's statements were inconsistent.

The government requested clarification as to which statements Simpkins intended to impeach. Simpkins replied that Rose, who was with Brown in the car across the street during the robbery, had told police in a recorded interview that he and Brown had not been involved with the robbery. Defense counsel then read the following portions of the report into the record:

> Rose came by Brown's house in an old two-toned Dodge truck, possibly a Prospect, driven by someone unknown to Brown.
>
> Brown rode in the back of the truck and Rose was seated in the front passenger seat. The three individuals were following Jeff Jenkins, who is a passenger, in Judy Russell's car driven by Nathaniel Simpkins.
>
> Brown advised that Jenkins had lived in Hialeah at one time and was familiar with the area. Brown recalled seeing a pawnshop and a Latin American Cafeteria in the same area as the Union Planters Bank.
>
> Brown recalled seeing the Saturn exiting the bank parking lot with a red cloud billowing out of the Saturn.
>
> Jenkins called Brown on the cellphone and told Brown that they needed a washing machine.
>
> Brown asked Jenkins why, at which point Jenkins suggested that they go to Brown's mother's house.

Simpkins argued that the report, when read in conjunction with Rose's statement that he and Brown were not involved in the robbery, indicated that Brown had initially denied involvement with the bank robbery. Simpkins argued that such a reading conflicted with Brown's testimony that he had not lied to law enforcement.

9

The district court found that the report did not contain any indication that

Brown had denied involvement with the robbery:

> I don't see anywhere in the statement where Brown initially stated to the officers that he was not involved in the robbery and he was seated at a mall.
>
> In the second paragraph, he says, "Jeff Jenkins woke Brown up by banging on his front door in his bedroom window. Jenkins told Brown that he wanted to, quote 'do dirty' which Brown took to mean that Jenkins wanted to do a robbery and that Brown had to get somebody to drive" which is what Brown testified to. That's what he told the detectives, that they had agreed to rob a bank.
>
> The only area that he seems to have contradicted what was in the statement is that "Brown recalled seeing the Saturn exiting the bank parking lot with a red cloud billowing out of the Saturn," and he testified that he actually saw the red cloud in the sky and not coming out of the car. Is that the area you wanted to ask him about?

Defense counsel responded "no" and said he was "reading the report differently

than the Court is and the government is." The district court then found that there

was no basis for the defense to call the FBI agent for impeachment purposes. The

government then rested its case.

Simpkins moved for a judgment of acquittal, arguing that the government

had failed to prove all of the elements of the charges against him. After the district

court denied the motion, Simpkins rested and closing arguments were presented.

During closing arguments, the government stated that the experience of coming to

court had been humiliating for Brown's mother, Russell, because she had to admit

10

that she had been taking money from her son even though she knew he had not earned it honestly. The prosecutor then argued: "Now, if anyone here wants to insinuate that she's lying regarding Nate Simpkins for whatever reason, to me, that is really compounding the humiliation that that lady went through in coming here and sharing these things with us." Defense counsel objected to this as an improper attack on him in his role as an advocate. The district court overruled the objection.

Defense counsel, during his closing argument, highlighted Jenkins's plea agreement with the government and stated: "And he got up in front of a federal judge, and so did the Assistant United States Attorney; and they lied. And they lied." Counsel then listed the numbers of Brown's and Jenkins's felony convictions and the terms of their plea agreements. Counsel also suggested that Russell's testimony was an act.

During rebuttal argument, the prosecutor said: "Think for a moment about the reasons these witnesses had to lie, because that was the theme of the defense: a reason to lie. Everyone had a reason to lie in this case, according to the defense, including the prosecution and the court." Defense counsel objected that he had not talked about lying by the court. The government responded that it was referring to the sentencing court and the district court overruled the objection. The government went on to say that in order to accept Simpkins's theory, the jury would have to

11

believe that the government would move the court to sentence Brown and Jenkins without regard to their actions, and that the court would accept such a motion.

The government later stated that Jenkins had identified Simpkins and "every other player in every other bank robbery." Simpkins objected that there had not been evidence to support the government's statement. The district court again overruled the objection.

As part of her charge to the jury, the district judge court instructed the jury that they must only consider the evidence presented and that "anything the lawyers say is not evidence in this case." The court also cautioned the jury that Simpkins was only being tried for the offenses that were charged in the indictment.

The jury found Simpkins guilty on all three counts. The district court later sentenced him to a 114-month term of imprisonment. This appeal followed.

III.

First, Simpkins argues the district court erred by admitting Brown's testimony about the prior robbery, which occurred on March 3rd and for which Simpkins acted as one of the gunmen. The district court found the evidence admissible as it was "inextricably intertwined" with the instant charge.[2]

---

[2] Because we find no abuse of discretion in the district court's "inextricably intertwined" ruling, we do not reach its alternative ground for admitting the evidence -- that it was relevant 404(b) evidence.

12

Rule 402 of the Federal Rules of Evidence provides: "All relevant evidence is admissible, except as otherwise provided by law." Fed. R. Evid. 402. Intrinsic evidence of another crime is admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). Even relevant intrinsic evidence may be excluded, however, if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. In determining whether to exclude evidence under Rule 403, the district court must "weigh the probative value of the evidence against the danger of unfair prejudice, confusion, misleading the jury, or undue delay or waste of time." United States v. Williford, 764 F.2d 1493, 1497 (11th Cir. 1985). The balance should be struck in favor of admissibility. United States v. Fallen, 256 F.3d 1082, 1091 (11th Cir. 2001). Moreover, a district court may limit the prejudicial value of evidence by giving a limiting instruction to the jury. United States v. Hernandez, 896 F.2d 513, 523 (11th Cir. 1990).

Here, Brown's testimony about the prior robbery explained why Simpkins was asked to participate in the charged robbery and why he was the driver of the

13

getaway car.  Moreover, the two crimes were linked in time and circumstances because they were both bank robberies and occurred only 20 days apart from each other.  Finally, any prejudice was limited by the district court's limiting instruction to the jury.  On this record, we discern no abuse of discretion in the district court's ruling that the testimony was admissible as inextricably intertwined with the instant offenses.

IV.

Simpkins challenges the sufficiency of the government's evidence on all three charges.  He asserts that the evidence does not sustain the jury's verdict because the government presented the testimony of other co-conspirators, who were not credible.  Simpkins suggests that in addition to the co-conspirators' testimony, the government was required to present what he terms "independent, non-biased evidence."  We disagree.

Credibility determinations are the sole province of the jury.  United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).  Reversal is not appropriate unless "no trier of fact could have found guilt beyond a reasonable doubt."  United States v. Garcia-Jaimes, 484 F.3d 1311, 1321 (11th Cir. 2007).  "For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face."  United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997)

14

(internal quotations and citation omitted).  "It must be testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature."  Id. (quotations and citation omitted). Moreover, judgment of acquittal is not required "because the government's case includes testimony by 'an array of scoundrels, liars, and brigands.'"  United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (citation omitted).

Counts One and Two charged Simpkins with bank robbery and conspiracy to commit bank robbery.  Under 18 U.S.C. § 2113(a), bank robbery involves taking or attempting to take property, money, or any thing of value from a bank, credit union, or savings and loan association by force and violence or by intimidation. 18 U.S.C. § 2113(a).  In order to prove a conspiracy, the government must "prove beyond a reasonable doubt (1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." United States v. Thompson, 422 F.3d 1285, 1290 (11th Cir. 2005) cert. denied, 127 S. Ct. 748 (2006).  Count Three charged Simpkins with the use of a firearm in the commission of a crime under 18 U.S.C. § 924(c), which prohibits using or carrying a firearm in furtherance of a crime of violence.  A crime of violence includes a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3).

15

A person who aids or abets a federal crime "is punishable as a principal." 18 U.S.C. § 2. "Under an aiding and abetting theory, the government must prove that the defendant in some way associated himself with the criminal venture, that he wished to bring it about, and that he sought by his actions to make it succeed. The aiding and abetting statute allows the jury to find a person guilty of a substantive crime even though that person did not commit all acts constituting elements of the crime." United States v. Broadwell, 870 F.2d 594, 608 (11th Cir. 1989) (citations omitted).

In the instant case, the government presented ample evidence to establish Simpkins's guilt beyond a reasonable doubt, including Brown's and Jenkins's testimony that Simpkins had agreed to help rob the bank by driving the getaway car, and that Simpkins waited in the get-away car while Jenkins and Irving robbed the bank. Moreover, Jenkins testified that Simpkins was in the car when he (Jenkins) gave a gun to Irving for use during the robbery. After the robbery, Simpkins drove the get-away car that transported Irving, Jenkins, and a bag in which a dye pack had exploded, and was emanating red dye, to Brown's mother's house, where he and the others tried to wash the dye off of over $30,000 in currency. Brown and Jenkins did not testify to "facts that [they] physically could not have possibly observed or events that could not have occurred under the laws

16

of nature." Calderon, 127 F.3d at 1325. In short, Simpkins has not shown that his co-conspirators' testimony was "incredible as a matter of law [or] unbelievable on its face." Id.

Moreover, in addition to Brown's and Jenkins's testimony, Brown's mother testified that after she noticed a bag with red stuff all over it in the trashcan and asked about the bag, Simpkins removed the bag from the trashcan and indicated it was his. And the government presented the testimony of Riera, the bank teller, who had seen the driver of the get-away card and whose description of the driver matched Simpkins's appearance at the time of the robbery. In short, taking the evidence in the light most favorable to the jury's verdict, and resolving all credibility evaluations in favor of the verdict, the district court did not err in denying Simpkins's motion for judgment of acquittal.

V.

We likewise find no abuse of discretion in the district court's ruling on Simpkins's request to call one of the agents who took Brown's post-arrest statement concerning the robbery. Simpkins says that the officer's testimony would have impeached Brown because, according to Simpkins, Brown's testimony contradicted his statement to law enforcement.[3]

---

[3] Simpkins argues for the first time on appeal that the denial of his request to call certain witnesses violated his right to present witnesses and a defense under the Confrontation Clause of

17

"The credibility of a witness may be attacked by any party . . . ." Fed. R. Evid. 607. But extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless "the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Fed. R. Evid. 613(b). In order to introduce a prior inconsistent statement, "the court must be persuaded that the statements are indeed inconsistent." United States v. Hale, 422 U.S. 171, 176, (1975).

Here, after hearing Brown's testimony and reviewing the report, the district court found that the statements were not inconsistent. This finding was not an abuse of discretion. Our own review of the testimony and the report reveals, as the district court found, that (1) the report did not state that co-conspirator Brown denied involvement in the robbery and (2) the report provided details surrounding the robbery, which were wholly consistent with Brown's testimony. Put simply, the district court did not abuse its discretion by determining that the report was

the Sixth Amendment. However, "[t]he Confrontation Clause guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of witnesses for the prosecution." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370 (11th Cir. 1994). Because Simpkins had the opportunity to cross-examine codefendant Brown in order to impeach his testimony, the Confrontation Clause is not implicated here.

consistent with Brown's testimony that he did not lie about his involvement with the robbery to the agents who took the report.[4]

## VI.

Finally, Simpkins argues that the district court erred by overruling his objections, which he have already detailed above, during the government's closing arguments.

> To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant. A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. When the record contains sufficient independent evidence of guilt, any error is harmless.

United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir.) cert. denied, 127 S. Ct. 1305 (2006) (quotation marks and citations omitted). We have identified the following four factors to consider in determining whether or not conduct had a reasonable probability to change the outcome of a trial:

> (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are

---

[4] In any event, Simpkins presented evidence that Brown lacked credibility because of (1) his prior felony convictions and (2) his interest in having his sentence reduced based on his cooperation. Thus, Simpkins cannot show that the verdict would have been different -- that is, substantial prejudice -- if he had been permitted to use the report as impeachment, which is the standard he must satisfy to warrant reversal for an erroneous evidentiary ruling. See U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1286 (11th Cir. 2001) ("An error on an evidentiary ruling will result in reversal only if a party establishes a substantial prejudicial effect or a manifest injustice.").

isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.

Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994) (citations omitted) (habeas context). "A curative instruction, however, may render a prejudicial remark by the prosecutor harmless." United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (quotation marks and citations omitted). Accordingly, the prosecutorial misconduct must be considered in the context of the entire trial, along with any curative instruction. Id.

From our review of the entire trial, there is no reasonable probability that the government's remarks, even if improper, affected the outcome of the case. The remarks were directed at Simpkins's attempt to undermine the credibility of the government's witnesses -- one of his primary theories of defense. Because the jury had the ability to evaluate the credibility of the witnesses, we cannot conclude that the comments had a sufficient tendency to mislead the jury. Moreover, the evidence of Simpkins's guilt was overwhelming. And the district court limited the effect of any comments by instructing the jury that the statements of the attorneys were not evidence. On this record, there is not a reasonable probability that the comments affected the outcome of the trial.

**AFFIRMED.**